This action was brought in the Superior Court of the city of Buffalo, under the authority of chapter 438, of the Laws of 1864, to test the validity of a certain assessment made by the city upon the lands of the plaintiff, and others, by virtue of an act of the legislature of this State, passed April 21, 1863, entitled "An act authorizing the common council of the city of Buffalo, to make re-assessments to defray the expenses of local improvements on Niagara street, in said city." (Chap. 196, Sess. Laws of 1863.)
The defendant is a municipal corporation, and has power, under certain restrictions, to cause streets to be paved, and other local improvements to be made, and the expense thereof to be assessed upon the parcels of land, in such city, to be benefited by the improvement, in proportion to such benefit.
As appears by the complaint, in 1859, the defendant ordered Niagara street to be graded and paved, and the expense thereof to be assessed upon the real estate benefited thereby. The assessment was accordingly made, amounting to $37,762, whereby the plaintiff's lands, among others, were assessed. The defendant contracted for the making of the improvement, at the sum above mentioned, and it was made, and the contractor fully paid and satisfied therefor, $8,700 of the required sum being received from parties assessed, *Page 268 
who voluntarily paid their assessments, and the balance, over $29,000, being borrowed from the general fund of the city. The lands, the assessments on which were not paid, including the plaintiff's, were sold for the non-payment of the respective assessments thereon; and were bid off at such sale by the defendant, in default of other bidders, pursuant to a requirement in its charter, for the term of 100 years. The general fund was subsequently made good for the sum so borrowed from it, by the issue and negotiation of bonds of the city, pursuant to another provision of the charter. The order directing the said improvement to be made was adjudged by the Superior Court of the city of Buffalo, in November, 1862, to be without jurisdiction and void, by reason of the want of the certificate of the city assessors, required by section nineteen, of title eight, of the city charter, as amended by the act of 1854. (Sess. Laws 1854, chap. 69.) Thereupon the defendant applied to the legislature of the State, and procured the passage of the act of April 21, 1863, above referred to, which act, after reciting the fact of the aforesaid order for the grading and paving of Niagara street, in said city of Buffalo, and of the said assessment, and that the same had been declared null and void, and that the said improvement had been fully completed, and that it is just and equitable that the expense thereof should be paid by the owners of the real estate benefited thereby, and that the same should not be a charge upon all the taxable property of said city, enacted that the common council of the city of Buffalo, for the purpose of defraying the expenses of said improvement, are authorized and empowered to re-assess the sum of $32,266.76, on the real estate benefited by said improvement.
On the 21st of September, 1863, the common council of the city of Buffalo directed the city assessors to assess that sum upon the real estate in said city benefited by said improvement, in proportion to the benefit resulting thereto. Whereupon the assessors, pursuant to the authority of said direction and said act, made a re-assessment of said sum on said real estate, including the real estate of the plaintiff *Page 269 
in the complaint described, which re-assessment was confirmed by the common council of said city, and the roll of said re-assessment was placed in the hands of the receiver of taxes for said city for collection.
The plaintiff avers that if the sum of $2,000 and upward (parcel of said re-assessment of $32,266.76) so assessed upon the premises of the plaintiff, shall not be paid, the said several parcels of land of the plaintiff will be sold for such non-payment.
The plaintiff demands judgment, declaring the said re-assessments, as to the lands of the plaintiff, illegal and void, and that the defendant and its agents be perpetually enjoined from enforcing or collecting the same.
The defendant demurred to the complaint, and the court, in General Term, sustained the demurrer and gave judgment for the defendant.
The ground upon which the plaintiff resists the enforcement of the re-assessment is, that the act under and by virtue of which it was made, is unconstitutional and void.
The doctrine that a statute which authorizes a municipal corporation to grade and improve streets, and to assess the expense among the owners and occupants of lands benefited by the improvement, in proportion to the amount of such benefit, is constitutional — as was held by this court in The People v.Mayor, etc., of Brooklyn (4 Comst. 419) — is not controverted by the plaintiff. But it is insisted by him that, inasmuch as the assessment in question was made after the improvement had been paid for by the city, and after the plaintiff had come into the full enjoyment of its benefits, and the money raised by such assessment was by the act required to be paid into the treasury of the city for the purpose of reimbursing it for moneys advanced to defray the expenses of said improvements, it was not an assessment to pay for the improvement and so not within the rule of the case above referred to — and his proposition is, that, to make the assessment valid, the benefit must be conferred at the time, and as a result and necessary consequence, of the making and collection of the assessment; that if this is not done it violates *Page 270 
that part of section six, of article one, of the Constitution, which is as follows: "Nor shall private property be taken for public use without just compensation."
It is settled by the case above cited that an assessment for local improvements, when made upon the owner of lands benefited, in proportion to the amount of such benefit, is an exercise of the taxing power.
The levying and collection of taxes is not, within the meaning of the clause of the Constitution referred to, the taking of private property for public use; but that provision applies to the taking of property under the exercise of the right of eminent domain. This is evident from the following provision in the next section of the article (art. 1, § 7): "Where private property shall be taken for any public use, the compensation to be made therefor, when such compensation is not made by the State, shall be ascertained by a jury, or by not less than three commissioners, appointed by a court of record, as shall be prescribed by law." This requirement is clearly inapplicable to the collection of taxes, and shows that the prohibition against the taking of private property for public use without just compensation, is not contravened by the act in question.
It is equally manifest that the other constitutional prohibition also contained in article one, section six, that no person shall "be deprived of life, liberty or property, without due process of law," could not have been intended as a restriction upon the taxing power of the legislature, and has not been violated by this act.
In discussing the power of taxation vested in the legislature, the learned judge who gave the opinion of this court in the case of The People v. Mayor, etc., of Brooklyn (supra), said: "It must be conceded that the power of taxation and of apportioning taxation, or of assigning to each individual his share of the burden, is vested exclusively in the legislature, unless this power is limited or restrained by some constitutional provision. The power of taxing, and the power of apportioning taxation, are identical and inseparable. Taxes cannot be laid without apportionment, and the power *Page 271 
of apportionment is therefore unlimited, unless it is restrained as a part of the power of taxation. There is not, and since the original organization of the State government has not been, any such constitutional limitation or restraint. * * The people have not ordained that taxation shall be general so as to embrace all persons or all taxable persons within the State, or within any district or territorial division of the State. * * Nor have they ordained or forbidden that a tax shall be apportioned according to the benefit which each taxpayer is supposed to receive from the object on which the tax is expended. In all these particulars the power of taxation is unrestrained. * * Taxation is sometimes regulated by one of these rules or principles of apportionment, and sometimes by another, and very often it has been apportioned without reference to locality, or to the tax payers' ability to contribute, or to any proportion between the burden and thebenefit."
The doctrine thus stated accords with what was said by Chief Justice MARSHALL in Providence Bank v. Billings (4 Peters, 514). "However absolute," he says, "the right of an individual may be, it is still in the nature of that right, that it must bear a portion of the public burdens, and that portion must bedetermined by the legislature. This vital power may be abused, but the interest, wisdom and justice of the representative body, and its relations with its constituents, furnish the only security against unjust and excessive taxation, as well as against unwise legislation."
In the case of Thomas v. Leland et al. (24 Wend. 65), the defendants were prosecuted for breaking the plaintiff's close, and for taking and carrying away his goods. They justified as commissioners for assessing, levying and collecting a tax in pursuance of an act of the legislature (Sess. Laws 1835, chap. 309), which authorized them to assess upon the real estate in the city of Utica the sum of $41,000, which had been secured to be paid into the treasury of the State, by the bond of A.B. Johnson and others, as an indemnity to the State for the expense of changing the northern termination of the Chenango canal from Whitesboro to Utica, *Page 272 
alleging that the acts complained of were done in the collection of such tax. The plaintiff's counsel insisted that the act was void, as it authorized the taking of plaintiff's property without just compensation, to pay the debt of the obligor in the bond. But the Supreme Court held the act valid, and in giving the opinion of the court Judge COWEN remarked: "I admit that this power of taxation may be abused, but its exercise cannot be judicially restrained so long as it is referable to the taxing power. The only check lies at present in that power being usually exerted on considerable bodies of men who possess a control in a greater or less degree over its agents."
In Brewster v. The City of Syracuse (19 N.Y. 116), this court held that the legislature has the power to authorize the levy of a tax for the purpose of paying to one who has constructed a municipal improvement, an addition to the contract price, which the corporation itself was, by its charter, forbidden to pay; and the foregoing doctrine of the case of ThePeople v. Mayor, etc., of Brooklyn, was re-asserted. See alsoThe Town of Guilford v. The Board of Supervisors of ChenangoCounty (3 Kern. 143).
The power over the subject of taxation accorded by these cases to the legislature, must be conceded to it, as well upon their authority, as upon the justness of their reasoning on the subject.
Now, without adverting to the undoubted power of the legislature in certain cases, to pass laws for the purpose of validating the acts of public officers and others, done without due conformity to pre-existing laws — and waiving the consideration of the question in reference to such power — if we look at the material circumstances of the case before us, we shall see that this municipal corporation had, at the time of the passage of this act, a clear necessity for a tax. It had borrowed the money necessary to pay for the improvements made under its former proceedings, and this it was bound to pay, notwithstanding those proceedings had been adjudged unauthorized and void. No one can doubt that the raising of the money to pay this indebtedness was within the legitimate *Page 273 
scope of the taxing power, nor that it was within the constitutional power of the legislature to pass an act authorizing a special tax for the purpose. These lands were within the city, and, therefore, under the strictest limitation of the taxing power, liable to bear a proportion of this burden. What proportion, it was, as we have already seen, the province of the legislature, and not of the courts, to determine. The legislature was not bound to apportion the tax among the taxable persons within the city, but might, according to its own view of justice and right, apportion the whole tax among a part of such persons. It saw fit to apportion the tax upon the owners of the lands which had been benefited by the improvements, in proportion to the amount of such benefit. As it is impossible, under the doctrine above adverted to, to say that it had not the constitutional power so to do, so it can scarcely be contended that in so doing it violated any principle of justice or right.
Upon the question of natural as well as legal justice and right, the circumstance that the improvements had been paid for by the city, and that the plaintiff was in the enjoyment of them before the assessment of this tax, does not, as I can see, affect the apportionment with injustice and wrong, any more than if it had been made in anticipation of the improvements. It is quite true, that, notwithstanding the improvements, when made, were a benefit to the plaintiff, the city by making them acquired no right of action against the plaintiff to pay for such benefit; and it may be true, as the learned counsel of the plaintiff has argued, that, in making them, the city assumed the relation of a trespasser against the plaintiff. Yet the act does not undertake to interfere with these legal relations existing between the parties. Whatever rights of action existed between them growing out of the making of the improvements, are left untouched by the act, and no new ones are attempted to be created. Neither is there, as the plaintiff's counsel insists there is, any interference with any other vested rights of the plaintiff, by seeking to re-establish against his lands a charge from which they had been released. The decision of the court declaring *Page 274 
that charge unauthorized and void was not overruled, nor in any manner interfered with, and there has been by the legislature, in the passing of the act, no encroachment in any way upon the functions of the judiciary. It is simply an exercise of the taxing power in a mode, as we have seen, within the constitutional scope of legislative authority, induced, it is true, by the failure of the former proceedings, but in no other sense retrospective, and in no objectionable sense retroactive. It does not reach back and attempt to legalize the tax which was illegally imposed, and by the court declared void, but does precisely what might have been done if there had been no previous attempt on the part of the city to collect the expense of the improvements out of the property benefited.
I can see no good ground for saying that the act is unconstitutional. The judgment of the court below must, therefore, be affirmed.
All the judges concurring,
Judgment affirmed. *Page 275