In the Matter of the Application of EMILY P. WOOLSEY.

The provision of the State Constitution (§ 18, art. 3) prohibiting the passage of " a private or local bill   *   *   *   laying out, opening, altering, working or discontinuing roads, highways or alleys," does not include and is not applicable to city streets or avenues.

The validity of a statute providing for the laying out or improvement of a city street is not affected by the fact that the power to do the work is conferred upon commissioners appointed by the act, instead of upon the municipal authorities.

Accordingly *held*, that the act of 1878 (Chap. 410, Laws of 1878), appointing commissioners to widen F. avenue in Long Island City, and the acts amendatory thereof (Chap. 318, Laws of 1880, and chap. 326, Laws of 1881) were not in violation of said constitutional provision.

Upon motion made in July, 1882, to vacate an order made in July, 1881, appointing commissioners of estimate and assessment, as provided for by said acts, it appeared that one of the moving parties appeared upon a motion to confirm the commissioners' report, made objection to the same and appealed from the order of confirmation, which appeal was still pending.   No appeal was taken from the order appointing the commissioners.   A contract was made for the work, which has been partially performed and certificates issued in payment therefor; also that many assessments had been paid, and a large number of those whose lands had been taken, including one of the moving parties, had received the amounts awarded to them.   The motion was not heard until December, 1882, and was denied.   *Held*, that it was discretionary with the court to deny the motion on the ground of *laches* without passing upon any other question.

Also *held*, that the parties who received the awards thereby waived any right to object to the constitutionality of the act; and that, therefore, an order of General Term setting aside the whole proceeding was error.

It appeared that one of the moving parties had not been assessed for the improvement.   *Held*, that she could not properly join in the motion.

*Matter of Woolsey* (29 Hun, 626), reversed.

(Argued January 29, 1884 ; decided February 26, 1884.)

APPEAL from order of the General Term of the Supreme Court, in the second judicial department, made May 26, 1883, which reversed an order of Special Term denying a motion to vacate an order appointing commissioners of estimate and assessment in the matter of opening, widening and improve-

ment of Flushing avenue in Long Island City, and an order confirming their report. The order of General Term vacated both orders. (Reported below, 29 Hun, 626.)

The facts so far as material are stated in the opinion.

*G. W. Cotterill* for appellants. Questions affecting the constitutional validity of an act should be most carefully considered, and courts should hesitate in pronouncing a law unconstitutional and void unless such a construction is clearly warranted beyond any reasonable doubt. (*Astor* v. *Mayor, etc.,* 62 N. Y. 575; *People* v. *Sup'vrs of Orange,* 17 id. 235, 241.) The Constitution forbids on its face the application of the term "highways" to streets in cities. (Const., art. 8, § 1; 1 R. S. [7th ed.] 103.) Property taken for highways and for streets rests upon entirely different principles; the former upon the right of eminent domain and the latter upon the right of taxation. (*McCollough* v. *Maryland,* 4 Wheat. 316, 428; 2 R. S. [7th ed.], 1238–1249; *Howell* v. *City of Brooklyn,* 37 N. Y. 267, 270; *People* v. *Mayor of B'klyn,* 4 Const. 419; *Litchfield* v. *Vernon,* 41 N. Y. 133; *Howell* v. *Buffalo,* 37 id. 267; *Guilford* v. *Sup'vrs,* 13 id. 143; *Sun Ins. Co.* v. *Mayor,* 8 id. 267; *Chapman* v. *Brooklyn,* 40 id. 372; 2 Dill. on Mun. Corp. [2d ed.] 695, 701, § 598.) The Constitution as interpreted by the common law forbids the application of the word "highways" to streets in cities. (*People* v. *Pinckney,* 32 N. Y. 377; *Meriwether* v. *Garrett,* 102 U. S. 472; Laws of 1871, chap. 461, title 11, § 14, p. 98.) The Constitution, as interpreted by legislation, forbids such application. (Journal of Constitutional Commission of 1872–3, 60, 73, 143; Appendix to Journal, 33.) The question of constitutionality is not an open question in this court. (*Matter of Lexington Ave.,* 29 Hun, 304; 92 N. Y. 629; *Indianopolis* v. *Cross,* 7 Ind. 9; *Cross* v. *Morristown,* 18 N. J. Eq. 305; *State* v. *Morristown,* 33 id. 57; *People, ex rel. Comm'rs,* v. *Banks,* 67 N. Y. 568; *In re Church,* 92 id. 1) The provision of the Constitution which reads: "Nor shall private property be taken for public use without compensation" has no reference whatever to the exer-

cise of the right of taxation, but only to that of eminent domain. (*Litchfield* v. *Vernon*, 41 N. Y. 133, 140, 141.) The legislature may cause local improvements to be made, and authorize the expense thereof to be assessed upon the land benefited thereby. (*In re Church*, 92 N. Y. 6 ; *N. Y. El. R. R. Co.*, 70 id. 329.) The act in question is well expressed in its title. An act to " improve" means necessarily to " widen." (*People* v. *Banks*, 67 N. Y. 575.)

*Frank E. Blackwell* for respondents. The motion to vacate the order appointing commissioners, and the order confirming their report was proper, the acts under which the orders were made being unconstitutional. (*In re City of Buffalo*, 78 N. Y. 362 ; *In re Department of Public Parks*, 85 id. 459, 464.) The application was properly timed, being a special proceeding, and being governed as to time by sections 388 and 414 of the Code. (78 N. Y. 362 ; 85 id. 459 ; *In re Manhattan S'v'gs Inst'n*, 82 id. 142.) Chapter 40 of Laws of 1878 authorizing the appointment of commissioners to widen Flushing avenue in Long Island City, and the acts amendatory thereof (Laws of 1880, chap. 318, Laws of 1881, chap. 326), violate section 18 of article 3 of the Constitution, which prohibits the legislature from passing a local or private bill "laying out, opening, altering, working or discontinuing roads, highways or alleys," etc. (*In re N. Y. El. R. R. Co.*, 3 Abb. N. C. 401, 421 ; *People, ex rel. Comm'rs*, v. *Banks*, 67 N. Y. 574.) The word avenue, as used in said acts, is within the terms "highway" and "road." (*Brace* v. *N. Y. C. R. R. Co.*, 27 N. Y. 270, 271 ; 1 S. & R. 103 ; Bouvier Law Dict., 3 Kent, 432 ; Thompson on Highways, 1, 6, 7 ; *R.* v. *Hartford College*, L. R., 3 Q. B. D. 707 ; Hardcastle's Construction and Effect of Statutory Law, 56 ; *B'k of Penn* v. *Commonwealth*, 7 Penn. St. 144 ; *Southwark Bank* v. *Commonwealth*, 26 id. 446 ; Law of 1882, chap. 106, § 19 ; id., chap. 199, § 35 ; id., chap. 247, § 1 ; Laws of 1882, chap. 249, § 1 ; Laws of 1872, chap. 872, § 7 ; *Newell* v. *People*, 3 Seld. 97, 469, 479 ; *McCloskey* v. *Cromwell*, 1 Kern, 593 ; *Rex* v. *Inhabitants of Great Bentley*, 10

B. & C. 527 ; Dwarris on Statutes, 703, 718 ; *Philpot* v. *St.
George's Hospital*, 6 H. of L. Cas. 338 ; 3 Jurist [N. S.], 269 ;
*King* v. *Poor Law Comm'rs*, 6 A. & D. 7 ; *Everett* v. *Wells*,
2 Scott [N. C.], 331 ; 2 Y. & J. 196.) The acts are unconsti-
tutional because they violate the provision of the Constitution
which prohibits the taking of private property for a public use
without compensation. (Const., art. 1, § 6 ; Laws of 1880,
chap. 381, § 5 ; id., chap. 461, §§ 7, 8 ; *Bloodgood* v. *M. & H.
R. R. Co.*, 18 Wend. 16.) The constitutionality of a law is
to be tested, not by what has been done, but by what may be
done under it. (*Stuart* v. *Palmer*, 74 N. Y. 185.) The acts
under consideration are local acts within the meaning of section
16 of article 3 of the Constitution. (*McConvill* v. *Hills*, 35
N. Y. 449 ; 46 Barb. 340 ; *People* v. *O'Brien*, 38 N. Y. 193 ;
*People, ex rel. Lee*, v. *Sup'rs of Chautauqua*, 43 id. 10.)
The act of 1878 does not express in its title the subject of that
act. (*Harris* v. *People*, 59 N. Y. 599 ; *Matter of Lands in
Flatbush*, 60 id. 407.)

MILLER, J. By the Constitution of this State, section 18 of
article 3, it is provided that " the legislature shall not pass a
private or local bill  *  *  *  laying out, opening, altering,
working or discontinuing roads, highways or alleys." By
chapter 461 of the Laws of 1871 an act was passed revising the
charter of Long Island City in which a uniform system of street
openings was established and the highways were put under the
control of the common council as commissioners of highways.
Subsequently in 1878, by chapter 410 of the Laws of that year,
an act was passed by which commissioners were appointed to
widen Flushing avenue, and the commissioners were clothed
with the same powers which were given by the charter to the
common council. This act was amended in 1880 by chapter
318 and again 1881 by chapter 326, and the question presented
upon this appeal is whether this act is in violation of the pro-
vision of the Constitution already cited. By the act of 1881
commissioners were named and appointed to open, widen and
improve Flushing avenue as stated in the act and as laid down

on a map filed in the Queens county clerk's office.   The commissioners were also authorized to curb, pave, build sewers and plant shade-trees.   It was also provided that the commissioners, "shall have and possess the same functions, rights and powers, and discharge the same duties as are granted to and devolved upon the common council by chapter 461 of the Laws of 1871, except that none of the provisions of sections 1 and 2, of chapter 2 of title 3 of said act, shall apply to any proceeding authorized by this act."   A further provision was made that, in order to pay for the improvements authorized and directed by the act, the commissioners should have power " to issue certificates of indebtedness in an amount not to exceed in the aggregate the sum of $150,000."   These commissioners were also to cer tify to the commissioners of estimate and assessment the cost of the improvements, so that the same might be defrayed out of and with the proceeds of such assessment.   The revised charter in regard to improving streets provides that, upon the written petition of the owners of a majority in lineal feet of lands fronting on any street or avenue, the common council shall give notice of hearing, and if they decide to open, widen, etc., they shall make application to the court for the appointment of commissioners of estimate and assessment. The commissioners, upon being appointed, are to proceed as prescribed by the charter.

The provisions of the various laws which have been cited amending the charter evince the intention of the legislature to take away from the common council the powers originally conferred in reference to the improvement of streets, and to confer the same upon individuals designated in the amendment. The object of the constitutional provision which has been cited was to prevent any such legislative action in regard to public highways and to place the control and management of them within the power of the local authorities.   (*People*, *ex rel. Commissioners*, v. *Banks*, 67 N. Y. 568.)   Prior to its adoption the interference of the legislature by the appointment of commissioners named by it to perform duties in regard to public highways, which more properly belonged to the local authorities,

had become an evil of a serious character and the design of the amendment was to remedy the difficulty and to place the keeping of highways and public roads within the supervision of the officers designated by law and in accordance with the general provisions of law regulating highways in the State.   There can be no doubt that this provision is applicable to roads and highways in the State generally, but a serious question arises as to the construction of the language employed in reference to the streets in incorporated cities which are not included within the general provision of law relating to roads and highways.   The words employed in the Constitution, viz., " roads, highways and alleys," on their face do not include streets, as that term is usually understood.   In common parlance the word " streets" is supposed to relate entirely to the avenues and thoroughfares of cities and villages and not to roads and highways outside of municipal corporations, and it would be placing a very liberal construction on this word to hold that it meant a highway or a road within the meaning of the Constitution when it is not named or included within its express terms.   The fact, that it was excluded in expressing the will of the framers of the amendment, is strong evidence of their intention not to interfere with streets in incorporated cities.   The proceedings of the constitutional commissioners who framed the amendment, and of the legislature that sanctioned it, tend to show that it was not designed to include streets in cities.   As originally reported only " roads and highways " were included, but it was amended by the commissioners by adding the words "streets and alleys," subsequently it was amended by the legislature by striking out the word " streets " and in this form adopted.   The amendment last made is significant and establishes quite clearly that the legislature did not design to include streets in cities. Although the word "alleys" has reference more particularly to narrow passages in cities, yet of itself it furnishes no reason for claiming that streets were embraced within the provision cited.   Aside however from the definition of the terms employed, the provision of the Constitution, in reference to the organization of incorporated cities, would seem to prohibit the

application of the terms "roads and highways" to streets in cities. It provides for the creation of municipal corporations by special acts of the legislature and that those acts may be altered or repealed. (Const., art. 8, § 1.) The application of the general laws relating to roads and highways would be inconsistent with the provision of the Constitution last cited, and as no general system exists in cities, and each one in this respect is governed by its own charter, it is difficult to see in what way the provisions of the amendment cited could be made to apply. As the Constitution has provided for the creation of municipal corporations by special acts which are subject to repeal or alteration, it is not apparent how the prohibition contained in the provision now considered can be regarded as taking away that right. In conformity with the evident purpose of the constitutional provision relating to the organization of cities, the legislature, in the exercise of its functions, has repeatedly passed laws imposing taxation upon municipal corporations, or particular localities therein, for the improvement of streets, and these laws have been sanctioned and sustained by the decisions of this court. (*Howell* v. *City of Brooklyn*, 37 N.Y. 267; *People* v. *Mayor of Brooklyn*, 4 id. 419.) Such a course is inconsistent with the general provisions of law in regard to roads and highways and to the amendment to the Constitution to that subject.

The question as to the application of the constitutional amendment cited to streets in cities has also been the subject of consideration in this court, and the precise point now presented was determined in *Matter of Lexington Avenue* (92 N. Y. 629). In the Supreme Court in that case (29 Hun, 304) it was held that, " the prohibition contained in section 18 of article 3 of the Constitution against the passage of a local or private bill laying out, opening, altering, making or discontinuing roads, highways or alleys, does not apply to streets and avenues of cities, but only to roads and highways as known and designated under the general highway system of the State." Although no opinion was written in this court, the affirmance of the judgment below is a direct authority upon the question. A distinc-

tion is claimed to exist between the case last cited and the one at bar on the ground that in that case the legislature directed the city officers to open an avenue which was done under the direction of the proper officers charged with that duty, but we are impressed with the conviction that the distinction is not well founded. The legislation referred to was a direct interference with the streets, which would necessarily conflict with the provision contained in the amendment of the Constitution. If that amendment applied the legislature was not vested with authority to act independent of the local authorities, as it assumed to do, and the proceedings would be void for that reason. We are unable to perceive why the authority cited is not in point.

It follows that the act in question was not unconstitutional because of the appointment of commissioners by the legislature, and no reason exists for setting aside the proceedings on that account. We are also of the opinion that, upon the facts presented in the motion papers, the order of the General Term was erroneous, and should be reversed. It appears from the record before us that no opposition was made to the order appointing the commissioners, and that Emily P. Woolsey, one of the respondents, appeared upon the motion to confirm the commissioners' report, and made objection to the same. An appeal was taken by her from the last-named order, which order was dated the 18th day of November, 1881, and that appeal is still pending and undetermined. Afterward a motion was made, on behalf of all the respondents, to set aside the order appointing commissioners and the order confirming their report. On the 24th day of October, 1881, an order was made which, after reciting that a motion was made on behalf of Emily P. Woolsey and Charles G. Francklyn to set aside the order appointing commissioners, denied the motion. On the 16th day of December, 1882, an order was made denying the motion, made by all the respondents, to vacate the order appointing commissioners and the order confirming their report, which order was re-settled on the 8th day of January, 1883. No notice of motion to vacate said

orders is contained in the 'papers except the notice on behalf of all the respondents for the 28th day of July, 1882. Although a motion seems to have been made previously no notice of the same is contained in the record. It thus appears that no appeal was taken from the original order appointing the commissioners, nor was any appeal taken from the order confirming the report except the one taken by Emily P. Woolsey, until after a motion had been made and denied to vacate the order appointing commissioners and to set aside the order confirming their report. Had the respondents appealed from the original order appointing commissioners and the order confirming their report, they could have thus directly raised the question as to the constitutionality of the act.

An affidavit on the part of the appellants shows that proposals were advertised for, and a contract made for grading said avenue, which has been partially performed, and work done thereon of great value for which the contractor has been paid in certificates authorized to be issued by the act in question, and that if the orders are vacated the contractor will lose a large sum of money; that the work of grading is nearly or quite complete in front of the property owned by the moving parties herein. It also shows that the assessments amount in the aggregate to over $100,000 and that many of the persons assessed have paid their assessments. An affidavit also alleges that the clerk to said estimate and assessment commissioners informed the affiant that a large number of persons, whose lands have been taken for the improvement made, have applied for and received in full the amounts awarded for their property taken. It will be seen that there has been considerable delay on the part of the respondents in making the motion to set aside the orders referred to. The order appointing the commissioners was made on the 5th day of July, 1881, and the order of confirmation on the 18th day of November, 1881. No attempt was made by the respondents to vacate these orders until the notice for the 28th day of July, 1882, and the motion was not heard until the December following. For any thing which is made to appear the motion to vacate the

orders may have been denied upon the ground of laches without passing upon any other question. In this respect it was discretionary with the court below, and there is no ground for claiming that such discretion was abused. Had the respondents appealed at once from the order appointing commissioners and the order of confirmation, the large expenses which have been incurred might have been avoided, and the proceeding in performing the work suspended until a decision could have been made settling the question as to the constitutionality of the act. The respondents would thus have had a perfect remedy. Having failed to avail themselves of such an opportunity to protect their rights, and the interests involved being seriously affected by their remissness it might well have been urged, in answer to the motion made, that they were not in a position to test the constitutionality of the law in question.

Questions affecting the constitutional validity of an act of the legislature should be considered with great care and in considering them it is the duty of courts to exercise some discretion in determining the time when and the manner in which they should be presented. In the case considered, if the law in question is unconstitutional there would be no authority to take the land of adjoining owners for the improvement, or to make an assessment upon the owners thereof to pay for the same. A sale thereof for an assessment would confer no valid title and the owner would no doubt have a right to institute a suit to prevent its enforcement. These objections to granting the motion made to vacate the order appointing commissioners and the order confirming the assessment might well have been urged upon the motion at Special Term and upon the appeal from the order denying such motion. Inasmuch however as the decision of the General Term was to some extent discretionary, and it may be doubted whether the court has exceeded its discretion, it is not perhaps the subject of review on appeal. Without deciding that question, however, the order of the General Term was erroneous because it set aside the whole proceeding, although it appears that one of the respondents, and others similarly situated, had received the awards

made for the taking of their lands, thus waiving any right to object to the constitutionality of the act, and thus affirming the validity of the whole proceeding. It also appears that another one of the applicants, Mrs. J. R. Bennett, has not been assessed, as her name is shown not to have been on the assessment roll, and therefore she could not unite in making the motion to vacate the orders.

We think that the motion made was properly disposed of at Special Term, and that the General Term erred in reversing the order denying the same.

Some other questions are raised as to the validity of the act, but having arrived at the conclusion that the order was erroneous on the ground last stated, they do not require examination.

It follows that the order of the General Term should be reversed and that of the Special Term affirmed with costs.

All concur.

Ordered accordingly.