(23 Misc. Rep. 53.)

In re VILLAGE OF LE ROY.

(Supreme Court, Special Term, Erie County.  March 25, 1898.)

1. MUNICIPAL CORPORATIONS — ESTABLISHMENT OF LIGHTING SYSTEM — SPECIAL ELECTION.

Laws 1894, c. 680, authorizes the water commissioners of any village owning a system of waterworks to establish a lighting system if the voters so declare at a special election held for that purpose, and provides for such election, describing the ballot to be used. *Held*, that all proceedings for establishing a lighting system are void if the question submitted is other than that required.

2. SAME—WAIVER OF DEFECTS IN ELECTION.

A compliance with the requirements of Laws 1894, c. 680, providing for establishing a lighting plant if authorized at a special election, is a condition precedent to the purchase or condemnation of an existing lighting plant, which the village cannot waive; and it cannot therefore be estopped by recitals or allegations in pleadings admitting that a valid election had been held.

3. SAME—CONDEMNATION PROCEEDINGS.

Until a valid election has been held, a court does not acquire jurisdiction of condemnation proceedings.

4. SAME—BONDS—CONSIDERATION.

Possession of property which a village had no right to acquire, because of irregularities in the special election to authorize the obtaining of such property, does not furnish a consideration of bonds to be issued for payment thereof.

This is a motion by the village of Le Roy to vacate and set aside certain proceedings heretofore had in this court, for the purpose of acquiring title to certain lands in the village of Le Roy, together with the gas generators, gas reservoir, and other property belonging to the Le Roy Gaslight Company, together with the franchises, system, privileges, and property of said company, by condemnation.

William T. Cogswell, for village of Le Roy.

Norris Morey, for water commissioners of village of Le Roy.

George Bowen, for Le Roy Gaslight Co.

WHITE, J.  The village of Le Roy is a municipal corporation in Genesee county, in this state.  On June 5, 1897, two of the three water and light commissioners of said village made a petition to this court on behalf and in the name of said village, for the purpose of acquiring, by condemnation, the plant and property of the Le Roy Gaslight Company, a domestic corporation, then engaged in furnishing to said village and its inhabitants gas and electric light.  Such proceedings upon said petition were thereupon had that afterwards, and on June 16, 1897, the said Le Roy Gaslight Company being then and there present in court, and not objecting thereto, an order was made by this court, which in terms adjudged that the condemnation of the property then sought to be acquired was necessary for a public use, and that the village was entitled to take and hold the said property for the public use specified in said petition upon making compensation therefor, and three commissioners and appraisers were appointed to ascertain and appraise the compensation to be made for the property then sought to be taken.  The commissioners proceeded

in the manner provided by law, and made their report, which was presented to the court November 18, 1897; whereupon the said report was confirmed, and it was adjudged and decreed that the compensation so ascertained and appraised be paid and distributed to and among the persons entitled thereto, according to the said report; and it was further adjudged and decreed, among other things, that the Le Roy Gaslight Company be allowed and paid by the village $550 as disbursements, and the further sum of $500 as counsel fees on said proceedings, and that, upon payment of the balance of the award to the Le Roy Gaslight Company within 30 days from that date, the property be turned over to the plaintiff for its use and benefit, and that the Le Roy Gaslight Company execute and deliver proper acknowledgments of payment and deeds of conveyance of its lighting plant, and that it recover costs and disbursements to be taxed. The village took possession of the plant, and for about three months has been operating it, and receiving the emoluments therefrom, although no part of the judgment has been paid or satisfied.

The proceedings in question were instituted on March 11, 1897, when the water and light commissioners signed and presented to the board of trustees of the village, at a special meeting then being held by them, a communication in the words and figures following:

"To the Trustees of the Village of Le Roy, Genesee County, New York—Gentlemen: We, the undersigned water and light commissioners of the village of Le Roy, having heretofore resolved ourselves into a board of water and light commissioners for said village, in the manner provided by law, and believing it is for the best interest of our taxpayers and citizens that this village should establish and maintain its own lighting system, respectfully request your honorable board to call a special election of the voters and taxpayers of the village of Le Roy to vote upon the question of taxation of the citizens of said village for the debt and expenses to be incurred by the water and light commissioners in purchasing, constructing, establishing, and maintaining a lighting system and plant for said village of sufficient capacity to supply said village and the inhabitants thereof with light for municipal purposes, in the manner provided by chapter 680 of the Laws of 1894."

The said board of trustees thereupon, at its said meeting, adopted a resolution in the words and figures following:

"Resolved, that a special meeting of the voters and taxpayers of the village of Le Roy, N. Y., whose names appear on the last assessment roll of said village, or who are qualified to vote on the question of taxation for the village lighting debt and expenses, be, and the same is hereby, called for the 30th day of March, 1897, at the village hall in said village, at which place the polls will be opened at 9 o'clock a. m., and shall continue open without interruption until 4 o'clock p. m., at which time they shall be closed, at which time and place the question will be submitted (by ballot) whether the taxes in this act authorized for the purposes aforesaid shall be levied and collected from the village as in said act provided."

The above application and resolution, preceded by the words, "Notice of Special Tax Meeting to Vote upon the Question of Village Lighting System," and a record of the special meeting held by the board of trustees March 11, 1897, at which the application was considered, were published in the Le Roy Gazette (a newspaper published in the village once a week) for two weeks, as and for a notice of the said election so as aforesaid ordered to be held by said trustees.

On March 30, 1897, an election was held in and for the said village,

pursuant to said notice.   The ballot used at the election was in the words and figures following:

(Notice to voters: For an affirmative vote upon any question submitted upon this ballot, make a cross [X] mark in the square after the word "Yes." For a negative vote make a similar mark in the square following the word "No." Any mark or erasure made on this ballot, except as above indicated, makes this ballot void, and it cannot be counted.  Use only a pencil having black lead.)

YES. ☐  Shall the taxes authorized in chapter 680 of the Laws of 1894, entitled, "An act to authorize the villages of the state of New York to furnish electric light or gas light to the inhabitants thereof," for the

NO. ☐  purpose specified in said act, be levied and collected from the village of Le Roy, New York, as in said act provided.

[Indorsed on the back of said ballot.]
[Consecutive Number.]

Official Ballot for the Village of Le Roy, For and Against a Lighting System. March 30, 1897.   Question submitted.                    Wm. R. Crofoot.
                                      Clerk of the Village of Le Roy.

Cross marks were made on a majority of the ballots cast, within the voting space or square opposite the word "Yes" on the ballot.

The authority for taking and prosecuting the condemnation proceeding was chapter 680 of the Laws of 1894, which provides that the board of water commissioners of any village having a waterworks system belonging to the village shall have the power to establish a lighting system within said village, for the purpose of supplying light by means of electricity, gas, or other approved system to the inhabitants of said village, and authorizes such water commissioners to issue bonds or other certificates of indebtedness upon the faith and credit of said village, to procure the necessary funds for establishing such lighting system under certain conditions, and to establish and maintain such lighting system to supply the inhabitants with light, and to collect rentals therefor; that the commissioners, upon establishing such a lighting system, may then arrange with the trustees of the village for the public lighting of such village, and the trustees may then levy and collect a tax to pay any deficiency in rentals for the expense of such public lighting.   The statute prohibits the establishment of a lighting system until after the proposition to establish it shall have been submitted to a popular vote at an annual or special election, and commands that at such election the ballots shall be "For a Lighting System," or "Against a Lighting System."   If a majority of votes cast be in favor of a lighting system, the commissioners may proceed to establish the same; otherwise, they shall not.   Where, as in this case, a lighting system had already been established by private persons for the purpose of furnishing light to the village and its inhabitants, under a franchise or contract granted or made pursuant to law, and was then engaged in furnishing such light, and a majority of the voters of such village shall have decided to establish a lighting system, the board of water and light commissioners shall proceed to acquire by condemnation.

This motion is based upon the claim that the judgment of November 18, 1897, and all the proceedings which led up to the pronouncing of that judgment, are void for noncompliance with the provisions of the statute upon which such proceedings were based.   The initial act on the part of the water commissioners was their communication

of March 10, 1897, to the trustees of the village, in which they request them to call a special election of the voters of the village to vote upon the question of taxation of the citizens of said village for the debt and expense to be incurred by the water and light commissioners in purchasing, constructing, establishing, and maintaining a lighting system and plant for said village, of sufficient capacity to supply said village and the inhabitants thereof with light for municipal purposes, in the manner provided by chapter 680 of the Laws of 1894. The act of 1894 does not make any provision for submitting to the voters any question concerning the use of a lighting system by the village itself, nor does it make any provision for submitting to the voters any question concerning taxation which may be necessary to raise the money to pay for any lighting system which may be purchased or acquired by the water and light commissioners. The only question which the statute requires shall be submitted to popular vote is the bare one whether or not the village shall establish or acquire a lighting system without any authoritative utterance by the voters at the election as to the methods or means to be adopted in paying the expense thereof. The right and power to establish or acquire a lighting system is vested exclusively in the commissioners. The right of the trustees is to secure, by arrangement with the commissioners after they have acquired the lighting system, the furnishing of light to the village. The money to pay for a plant established and acquired was to be raised upon bonds or certificates of indebtedness for that purpose, on the faith and credit of the village, but to be issued by the commissioners.

For reasons already given, neither the request of the commissioners of March 10, 1897, nor the resolution of the trustees therein of March 11, 1897, correctly or approximately describes the object or purpose of the election held March 30, 1897, according to the requirements of the statute. The sole object and purpose of such an election was to enable those electors entitled to vote upon the question to say whether or not the village of Le Roy should or should not acquire a lighting system, without any reference whatever to the price to be paid or the way in which it should be paid. Notwithstanding this misdescription of the statutory object and purpose of the special election, it would perhaps be harmless if it had been followed by an actual vote upon the question authorized by the statute to be submitted to them by the voters of the village; but a comparison of the provisions of the statute with the form of the ballot used at the election is conclusive evidence that the question so authorized was not submitted. The provision of the statute is plain, and admits of no doubt as to its meaning. It is simply whether or not the village shall establish or acquire a lighting plant. That is the full extent to which the electors are entitled to participate in the proceedings. The proposition or question submitted did not in the remotest way refer to the question or proposition authorized by the statute, but, by its terms, assumes that the act of 1894 authorizes and regulates the levying of taxes for the purpose of paying for a lighting plant, and asks the voters to say whether such taxes shall be levied and collected from the village; whereas the act does not con-

template the levying of any taxes to pay for the plant except upon the contingency of there being a deficiency in the revenue derived from operating it. The difference between the two propositions or ques-tions is radical, and the language used in giving expression to them clearly establishes the fact that they do not relate to kindred sub-jects even. The subject which the voters were entitled to act upon was solely and simply whether the village should acquire a lighting plant, and they alone were authorized to decide that question. The act contained a further provision that the board of water commis-sioners should collect the rents for water and light furnished the in-habitants of the village, and dispose of the moneys thus collected in the same manner as provided for the disposition of moneys derived from water rentals by chapter 181 of the Laws of 1875, relating to board of water commissioners, namely, to apply such rentals to paying the interest and principal of the bonds issued to raise money to pay for the plant. There was an entire failure on the part of the water commissioners and trustees and the qualified voters to comply with the provisions of chapter 680 of the Laws of 1894.

It is apparent that, in attempting to comply with the act of 1894 in this proceeding, the water commissioners and trustees of Le Roy followed with more or less accuracy certain formalities prescribed by chapter 181 of the Laws of 1875, in points where there was no rela-tion between the two statutes. The scheme of the act of 1875 was much broader and more comprehensive than that of the act of 1894. By the act of 1875, the "authorities" of a village were defined to be the board of trustees thereof. It authorized the trustees to organize themselves as a board of water commissioners. It authorized a board of water commissioners thus organized to purchase or acquire by con-demnation any lands within the county, and erect thereon and operate a water plant for the purpose of supplying the village with water. It authorized and required said board to borrow from time to time, upon the credit of the village, the money necessary for that purpose, and to issue bonds, certificates, or other obligations signed by them as such commissioners, and make them valid against the village. It required said board to establish rates for water, and to collect the same, and that the receipt be applied to the payment of interest upon the money borrowed, and the creation of a sinking fund for the pay-ment of the principal. If the receipts proved inadequate, the board of trustees was authorized and required to cause the deficiency to be assessed, levied, and collected, and properly applied. The act made the board of water commissioners a quasi corporation, which could contract and sue and be sued as such. The act of 1875 further pro-vided (in section 21) that, at any time after its passage, a meeting of the electors of any village might be called by its board of trustees upon notice published for two weeks in one or more weekly news-papers, at which the question was to be submitted whether the taxes authorized by the act for the purposes named in it should be levied and collected from the village as in the act provided; and it pro-hibited the board of water commissioners from proceeding with any duties under the act, unless the majority of voters and taxpayers should vote at such meeting in favor of such taxes; that the vote

should be by ballot, and there should be written or printed on the ballots of those in favor of the taxes, "For the Water Taxes," and on the ballots of those opposed, "Against the Water Taxes." As has already been said, by the act of 1875 the board of trustees was authorized and required, in case of a deficiency in the water rentals, to cause a levy and collection of taxes for the purpose of paying such deficiency; while the act of 1894 authorized no one, under any circumstances, to levy or collect any taxes for any purpose. Furthermore, the act of 1875, by its terms, was inapplicable to any village wherein a board of water commissioners had been created according to law, which seems by the papers to have been the case with Le Roy.

The next question which naturally arises in the consideration of this case is as to the effect upon the proceedings attacked of such noncompliance with the statute. It is claimed by the counsel who makes this motion that the court never acquired jurisdiction of the subject-matter of those proceedings, and that, therefore, they were, and that the judgment entered upon them is, void. The failure to follow the statute originally, furnished a complete defense at the time to the proceedings if it had been invoked for that purpose. The right conferred upon these water and light commissioners to acquire a lighting plant was not absolute, but was conditioned upon a previous popular vote, sanctioning and authorizing it. "Permitting the voters of a municipality to decide upon questions of local interest or expediency, such as that of supplying its own light and water, seems to be conformable to those ideas of self-government and self-regulation by the people concerned which lie at the basis, not only of our municipalities, but of our institutions." The trend of legislation, as evidenced by the village law now in force, is in accordance with this doctrine. A sound public policy demands that constitutional and statutory provisions designed to secure to and protect the people concerned in the enjoyment of such rights and privileges shall be liberally construed in their favor. For that reason, the popular vote provided for in chapter 680 of the Laws of 1894, under which this proceeding was prosecuted, was a condition precedent to the right and power of the water and light commissioners to institute it; and, for the same reason, it was not competent for the village authorities to waive a compliance with the statute in that respect.

As between the parties to this proceeding, the doctrine of estoppel by recitals or allegations in the pleadings has no application. The village of Le Roy, as distinguished from its agents and officials, the water and light commissioners, and its trustees, is the real party in interest in this proceeding, which for the purposes of this motion, at any rate, is essentially the same proceeding that was instituted by the water and light commissioners; that is to say, it is the corporate rights that are involved, as distinguished from those of either the water and light commissioners or the trustees. They are each but agencies or instrumentalities used by the corporation for the transaction of its business, and, so far as this proceeding is concerned, the functions of the water and light commissioners ceased when the judgment of November 18, 1897, was entered; and thereupon the right to take steps to correct or set aside that judgment, if such a

right exists, has devolved upon the municipality, which acts in such matters by and through its board of trustees; and therefore the corporation is properly in court upon this hearing. The motion to set aside the judgment being made, therefore, by the corporation, through its board of trustees, and the corporation being the real party in interest, the motion is not a collateral, but a direct, attack upon the judgment and proceedings sought to be set aside. There is no controversy about the power of the village to acquire this lighting plant by proper proceedings in compliance with law. The claim is simply that, through inadvertence and mistake, a condition precedent to the right to exercise that power was not complied with, and that, by reason of that mistake, the village is unable in this proceeding to raise the money to pay for the plant in the only manner authorized by law. There is no dispute about the fact that any one taking the bonds proposed to be issued by the village would take them with notice of the defect, and would be estopped from claiming to be bona fide holders within the line of cases which decide that such a holder may recover against the corporation, where the statute confers upon the corporation or its agents the right to say that the popular vote required by law was had, even though recitals to that effect were contained in the bond.

It is claimed by the gaslight company that the decree herein has been satisfied in part, and that, therefore, it cannot be set aside or vacated. The decree has certainly not been satisfied. It is a decree for the payment of money upon the performance of certain acts by the gaslight company, none of which have been performed, nor has any part of the judgment been paid. The possession of the property sought to be condemned has been delivered by the company, and accepted by the village; but if the village had no right or power to acquire the property in the absence of a popular vote sanctioning and authorizing it, as it had not, then the title thus acquired does not furnish the basis of a consideration for the bonds to be issued, contemplated by the statute, and the judgment ought not to stand. The case is not within the doctrine of In re Woolsey, 95 N. Y. 135, and other cases which hold that constitutional and statutory provisions may be waived by persons for whose benefit they exist. The case at bar does involve public policy, and is not exclusively a matter of private right. See Mayor, etc., of New York v. Manhattan Ry. Co., 143 N. Y. 1, 37 N. E. 494; In re Cooper, 93 N. Y. 507. If it were competent for the constituted authorities of a municipality to waive a popular vote enjoined by the constitution or by statute, the only thing necessary to be done to render such provisions nugatory and meaningless would be to elect to office persons who, for one consideration or another, might find it expedient to waive a compliance with them.

The court had not jurisdiction to pronounce the judgment in question, for the reason that the popular vote required by the statute was essential to confer it. As has been already said, it was a condition precedent to the right to prosecute the proceedings for condemnation, and that fact distinguishes this from the case of Hunt v. Hunt, 72 N. Y. 217, and others in line with it, involving the ques-

tion of jurisdiction of the subject-matter of an action or proceeding. The court·has the power to set aside the judgment of November 18, 1897, and the proceedings upon which it is based (Black, Judgm. § 314; Code Civ. Proc. § 1283); and the facts and circumstances seem to demand that it be done, upon condition, however, that the village of Le Roy make full, complete, and entire restitution to the Le Roy Gaslight Company.