In the matter of PEARL-STREET IN THE CITY OF
NEW-YORK.[*]

The report of commissioners of estimate and assessment, relative to the widening, &c. of streets, will in general be confirmed, unless the commissioners have violated some positive rule of law, or the legal interest of the owner, tenant or other party interested in the premises, has been misapprehended.

Under peculiar circumstances a report will be sent back for reconsideration as against the weight of evidence; but to induce such a course the facts must be of a decisive character, and border strongly on the conclusive; a mere prima facie case against the report derived from proofs exhibited by the objectors, will not be sufficient for that purpose.

In determining whether a report shall be sent back for reconsideration upon the questions of assessment of damage and appraisal of benefit, the court adopt the rule which governs in reviewing the verdict of a jury or a report of referees upon a question of fact; that is, unless there is a plain and decided preponderance of evidence against the judgment of the commissioners, the court will not interfere.

The opinions of witnesses as to the value of property, taken for public improvement, are admissible in evidence; but such testimony is of the lightest kind and is received and acted upon with great caution.

It is not necessary, in a report, to specify, in separate columns, the amount of benefit and damage, estimated and assessed to the same individual; it is enough to state the benefit over and above the damage.

R. EMMET, the counsel for the corporation of the city of N. York, presented a report of the commissioners of estimate and assessment and moved for confirmation. C. F. Grim, counsel for the trustees of the estate of Christian Baehr, deceased, objected to the confirmation of the report upon the grounds : *first*, that the report was incorrect and ought not to be received, inasmuch as it did not specify, in separate columns or otherwise, the amounts of *benefit* and *damage*, but only stated the benefit at a given sum over and above the damage; *secondly*, that the amount of *damage* allowed to his clients was grossly inadequate. In support of the second objection several affidavits were produced. Besides the trustees of the estate of Baehr there were numerous other objectors to the confirmation of the report.

---

[*] Report presented for confirmation at November special term, 1836.

Mr. Justice Cowen, who held the special term, overruled the first objection, and in reference to the second and similar objections by other parties, delivered the following opinion :

I do not deny that cases may arise in which a reconsideration of the report should be awarded, upon the mere weight of evidence ; but to induce to such a course, the facts should be of a very decisive character, and border strongly on the conclusive. I am not prepared to say that, in reviewing the decision of these commissioners, even a *prima facie* case against their award, derived from proofs independent of their opinion, should be listened to as a valid objection. It must, in general, be enough to sustain their estimates and assessments, that no positive rule of law has been violated. If we do not find that the legal interest of the tenant, owner, &c. has been misapprehended, their decision then stands as a matter of opinion on the value of an article in the market. So many considerations of time, locality and other circumstances enter into the estimate, that the only means of finally settling the question is an appraisal. That is committed by the statute to commissioners appointed by this court and carefully selected. 2 R. L. of 1813, 409, § 178. They have power, and it is made their duty, to view the premises if necessary, examine experts to whom they may administer an oath, and explore all the best sources of information. Id. 410. Statutes, sess. of 1818, p. 196, § 2. With these means they generally combine a considerable degree of previous local knowledge. Great differences of opinion may and frequently do exist among witnesses. It is hardly ever safe to disturb the decision of such a question, or any other question of fact, made by the tribunal to whom it is primarily committed. Whether it come from a jury, a master, referees or commissioners, we must be governed by the same principle. The very circumstance that it is open to difference of opinion should lead us to conclude that the first decision can rarely be bettered by a reversal founded on the partial and refracted light of an appellate tribunal.

In the case of the estate of Christian Baehr, deceased, we ALBANY, May, 1839. have a narrow strip of about 40 square feet, taken from a lot now in charge of trustees. I say *lot;* the whole is only In the matter of Pearl-street. 255 square feet: about a *tenth* of a lot 25 feet by 100. It is, however, situated on the corner of Pearl and Wall streets. This small fragment was admitted on the argument to be the most valuable land in the city of New-York. It is taken for the widening of Pearl street. The whole lot which the deceased originally owned was 1120 square feet, and all except the present small area was taken by the widening of Wall-street; the report of the commissioners in respect to which was confirmed a few months since. For that the estate was allowed $72,000. For the present strip the commissioners allowed at a less rate, and indeed an allowance at the Wall-street rate would very greatly exceed the present valuation. The strip is all front land. Such is the aspect which the case wears on the presentation of the trustees claiming compensation, and it is well sustained by three affidavits of value, one of which is by Mr. Mills, an auctioneer residing on the opposite corner, and who was the former tenant of the premises in question. One of the affidavits would make a full lot, at the rate which it affixes to the 40 feet, worth more than half a million, and another nearly as much. We ought not, however, to test these estimates by extending them to an extire lot, the value of which would plainly diminish as we go to the rear. A greater value seems to arise from this corner being situated in front of other land, the owners of which would give almost any price for the sake of connecting themselves with the street. This, among other marketable advantages, the trustees are undoubtedly entitled to urge as an item in the estimate. The circumstance of its projecting beyond an opposite corner of Pearl-street, thus forming a conspicuous point known as *The Light House,* now to be cut off and reduced to the general line of the street, may also be added. The counsel for the trustees consented to apply the rate of valuation on the Wall-street side as one acquiesced in by both parties, and it is not pretended that the 40 feet is worth less than a corresponding strip on Wall-street.

If the objection stood *alone* on affidavits of opinion, I can by no means say that I ought to hesitate in adopting the report. The attention of the commissioners must have been particularly drawn to the forty feet. They have made a large allowance, if we look to the abstract amount; and it is said by the counsel of the corporation, that after full inquiry and much reflection, they felt that they could not in conscience allow more. I have no doubt that is true; I agree also that if this were a case of naked opinion of value, however honest and, cautious, we should have but slight evidence compared with the unanimous and deliberate estimate of impartial commissioners. They turn their eyes on all sides, and their attention is aroused to many things which would escape the utmost exertion of *ex parte* vigilance, Looking at the numerous valuations in the course of this business, the number which have been questioned, the corrections made under sharp collision between parties, whatever qualifications these appraisers may have brought into the commission, they must have become masters of the market in the progress of their original report. After it was filed and advertised, they acted with more singleness on points of value made by individual objectors. On the other hand, *opinions of value*, even those which are *ore tenus* and open to cross-examination before a jury, are barely admissible. To receive them at all, is a departure from a general rule of evidence ; and judges who preside at nisi prius sometimes have reason to regret that they should in practice form an exception. The practice is inveterate, however, and is sanctioned by some of our books and adju dications. Swift's Ev. 111. *Kellogg* v. *Kranzer*, 14 Serg. & Rawle, 137, 141, 2. Some entirely exclude it. In *Rochester* v. *Chester*, 3 N. Hamp. R. 349, 364 to 366, the court refused to receive opinions as to the value of land, even from those skilled in the market. They said the land must be described, and the jury must then judge from facts. *Kellogg* v. *Kranzer* was directly the contrary ; but the whole history of this kind of evidence shows that it is separated from incompetency by a very thin partition. At any rate, receiving such opinions indiscriminately is but a waste of

time. It always seemed to me that the question, "What is your opinion?" ought never to be put until it is first ascertained from the witness that he is a dealer, or well acquainted with the trade in the article which he is called to appraise. He may then come within the spirit of the exception which receives scientific opinions or the opinions of experts. Mr. Mills probably comes nearest to that exception among the three witnesses who have made affidavits in this case. He was admitted on the argument to be an auctioneer of extensive business in the city, though he gives no such account of himself. He resides in the neighborhood ; he formerly occupied this corner ; and offers in his affidavit three times the amount of the appraisal. He thinks it worth more than any other front. It is in his opinion not only equal but superior to the land taken a few months ago on Wall-street. Then add the appraisal of that property, not *res inter alios*, but *res inter eosdem acta*, uncontested, and so deriving additional force as a kind of conventional standard between the very parties now litigating, and I confess that I felt on the argument, and still feel, after more mature reflection that the objection in behalf of this estate comes with a support which calls for further consideration. In saying that, I must be considered to speak mainly from two undisputed facts, viz. the equal (not to say superior) value of this front to the land formerly taken on Wall-street, and its admitted value. In this light, the value of the forty feet is little short of *rem judicatam*. To that I certainly add the affidavits, and consider the total absence of counter affidavits as another, though a very slight circumstance. I know the force of the argument from Wall street is sought to be baffled, by saying that the valuation there was a monster of extravagance, and that the trustees of the Baehr estate chuckled at the inadvertence of the commissioners and corporation in suffering it to pass. But how do I know that? Again, I was gravely appealed to on the argument to say that the demand of the trustees is inflated on its face ; and I am, it seems, intuitively to pronounce that it is shockingly out of proportion to all ideas of valuation. I am free to say, that it exceeds any thing which I

ALBANY, May, 1839.

In the matter of Pearl-street.

should have thought of as a mere price of land for any part of the habitable globe. I have seen and heard enough, however, to learn that *high* and *low* in such matters, are terms of very complicated relation; and above all, I know too much of my own capacity on this head to trust myself as an expert. I have not even been in the city, except at long intervals; and about all I have learned of the market when my visits were most frequent, did not extend beyond the price of books at a few of the stores. I can only add as a further answer, that I have heard too much from New-York and elsewhere of late, to be shocked by the apparent extravagance of land prices. For the reasons assigned, though, I confess, not without some hesitation, I must send back the report for reconsideration in respect to the forty feet of the Baehr estate. I know that my inquiries after prices could not be so successful as those of the commissioners, even were I on the spot. But the combined force of the Wall-street appraisal, with the coinciding estimates of others, one of whom I should think occupies the vantage ground over all of us, has led me to think the commissioners may have erred. On the proofs, I should have taken the Wall-street estimate as the standard. I do not say that the force of the circumstances upon which I rely may not be overcome. I certainly view them all as of a *persuasive*, not a *conclusive* character, and any thing which I say here on inferences from the force of the present evidence is not finally to bind the commissioners upon farther investigation.

The sending back of the report on the ground taken, is in the nature of granting a new trial, because the first verdict was against the weight of evidence. 2 R. L. 413, § 178. My object is, to have the estimate and assessment of the Baehr property thoroughly re-examined and reconsidered.

Rule accordingly.

At the special term in April, 1837, an amended report was presented and confirmation asked. The confirmation was opposed by R. Sedgwick as counsel for the trustees of Baehr's estate; and upon that occasion Mr. Justice

Cowen, who presided at that term also, delivered the following opinion :

ALBANY, May, 1839.

In the matter of Pearl-street.

The estimate of loss and damage, &c. in taking the lands belonging to Christian Baehr's estate has been reviewed by the commissioners ; and upwards of $600 (it is said about $16 per square foot) added to the former estimate.

An objection is interposed that the estimate is still too low. This is founded on the assumption of two things ; *first*, that the value of the premises in question, in the same hands with the land taken from the adjoining Graham lot, and correctly valued at upwards of $11,000, must be taken as the true value of both ; *secondly*, (upon several affidavits,) that both together would command in market $20,000 ; whence it is sought to be inferred that the Baehr premises are worth more than $8000, or whatever the excess of both over the Graham lot would amount to. The commissioners took a different line of enquiry. They asked witnesses, Were you the owner of Baehr's lot, what would you give for Graham's ? And what is the value of Baehr's ? A number of gentlemen answered : from the mean of whose affidavits the amended estimate is taken, at $2240. Looking at the appraisals of contiguous lands confirmed or acquiesced in, as well as actual sales, there are coincidences which go to fortify the estimate now made.

It is moreover conceded that, when this matter was before me in the first instance, I mistook the real amount of disparity between the valuation of the premises now in question and of the Baehr land formerly taken for widening Wall-street. According to what I now understand, there is perhaps a fair approximation to the Wall-street valuation, considering this corner as much shorn of some of its former advantages by that improvement. I understand on the former argument that a valuation on the Wall-street basis would be satisfactory. The necessity of a purchase to car ry out the Graham lot, is not absolute ; though it certainly exists in a degree ; while the inconvenience of owning this small strip alone, creates a countervailing necessity. So far as opinions are concerned, they stood before and still stand,

ALBANY'
May. 1839.
In the matter
of Pearl-street.

apparently at a distance which is to me altogether unaccountable. The present witnesses, for aught I can see, adopt the same principles of estimate, and yet differ several thousand dollars upon forty feet of land. Their opinions were competent as matter of persuasive evidence, to be considered by the commissioners in connection with facts; but neither can be conclusive on this question of value; nor do I feel forced to the conclusion that any essential principle of estimate has been violated. I did not suppose so before; but thought it one among, the few cases of the kind, which had better go down on the weight of evidence for reconsideration. I must, after all, defer the final valuation to the commissioners, who are alone competent to strike the balance on a conflict of evidence, especially of evidence going to value. My main object was to draw their attention to this particular spot with more singleness; and it appears to me that the purpose has been executed with all the fidelity and candor which can be demanded. This should be satisfactory, even had it resulted in no alteration whatever. The principle of associated value, so strongly insisted upon in the argument, is very imposing, and, for aught I see, correct. But it is still a question of value in the measure of its application, and, in that view, open to all the countervailing considerations which have been brought to bear upon it. The carrying out of the principle is matter for great difference among men; upon which no positive and controlling direction, or any thing like it, can be given here. I certainly cannot say that, in the variety and conflict of opinions rendered and views taken, the case is free from great difficulty; and sitting primarily upon it, I should be much embarrassed in the attempt to draw a conclusion satisfactory to my own mind. On the principles, however, which I think should control it, as an appeal case, I feel quite satisfied in directing a rule for confirmation.