Nov. Term,
1856.

Boyd
v.
Doty.

*Per Curiam.*—The judgment is affirmed with 5 per cent. damages, and costs.

*B. Smith,* for the appellants.

*A. L. Robinson,* for the appellee.

---

## Boyd and Another *v.* Doty and Others.

Where an equitable case is presented, a mistake in the partition of real estate must be rectified by the court upon some just basis.

In a case of mutual mistake which has been entailed on innocent purchasers, the court will not go behind the partition if it can be avoided.

A report of commissioners for partition is sufficiently certain, if it is capable of being reduced to a certainty by survey.

Where such is the case, if heirs fail to have a survey made, before making entry and improvements, they must bear the consequences of mistake.

The fact that heirs carelessly took possession of land to which under the partition they had no title, would not affect the rights of parties, unless continued for twenty years.

Parties will not be allowed to take advantage of their ignorance of facts which they might and should have known.

*Saturday,*
*December 13.*

APPEAL from the *Perry* Circuit Court.

STUART, J.—Complaint by *James* and *Frederick Boyd* against *Doty* and others, to reform a decree of partition. Demurrer to the complaint, assigning for cause, that the facts were not sufficient to entitle the plaintiffs to relief, sustained. The *Boyds* appeal.

It appears that *Wait Vaughan* died seized of a tract of land in *Perry* county, leaving a widow and five children his heirs at law. In 1846, *Sarah Vaughan,* one of the heirs, filed her petition in the Probate Court for partition, making the other heirs parties. Upon this petition such proceedings were had that commissioners

Nov. Term,
1856.

BOYD
v.
DOTY.

were appointed, partition made and reported, and the report confirmed. The tract of land partitioned lay in a triangular form on the *Ohio* river; the sectional lines containing, and the river subtending, the right angle. Commencing on the west side, the commissioners assigned the several shares in regular parallelograms. Thus, to *Edward Vaughan*, 45 acres on the west side, "being a piece of equal width from the river north to the east and west line of the land." To *Prudence Vaughan*, 45 acres next adjoining on the east. To the widow, *Samantha Vaughan*, 75 acres east and adjoining that of *Prudence*. To *Sarah Vaughan Burnet* 55 acres east of the latter. To *Alfred Vaughan* 50 acres east and adjoining *Sarah's*. And to *Benjamin H. Vaughan* 50 acres adjoining *Alfred's*.

Without going into minutia, the partition contemplates the tract of land as containing about 324 acres; and partition was made without survey.

In point of fact, when subsequently surveyed it was found to contain 376 acres. The partition was made in 1846; the survey disclosing the discrepancy in quantity was made, *May*, 1853. The land lies in this form:

The 75 acres set off to the widow as dower, are not included subject to the dower in any of the shares of the five heirs.

Upon partition being made in 1846, the widow and heirs took possession of what they supposed to be their respective shares, and so occupied, by themselves, their assigns, or *their* heirs up to the survey of *May,* 1853.

In *March,* 1849, *Alfred* conveyed all his share in the estate to one *Cavender;* and a year after *Cavender* conveyed to *Frederick Boyd,* one of the appellants, not the interest he had purchased in the *Vaughan* estate, but the tract of land set off to *Alfred Vaughan,* containing 50 acres more or less.

In *January,* 1851, the administrator of *Benjamin Vaughan* conveyed to *Cavender* 18 acres off of the west side of the 50 acres set off to *Benjamin.* In 1853, *Cavender* conveyed these 18 acres to *Frederick Boyd,* who conveyed the undivided half of both lots to one *Lee,* and *Lee* to *James Boyd,* the other appellant.

It will thus be seen the complainants are the owners in fee of the 50 acres, more or less, set off to *Alfred Vaughan,* and of 18 acres on the west side of the 50 acres set off to *Benjamin Vaughan,*—provided the location of these tracts respectively can be ascertained. They lay no claim to any share in the land on which the dower was located. But they allege that by survey, the share of *Alfred* is now placed further west than was at first supposed; that the lessees of *Benjamin Vaughan* are intruders upon the land that was thought to belong to *Alfred,* of which *Alfred* took possession, and of which he delivered the possession to *Cavender,* on the sale to him. The prayer is for a survey of the land, for an enlargement of each share, on the basis of the original partition, so as to divide the surplus 56 acres among the present owners of the several tracts, and for possession of the land held by the lessees of *Benjamin Vaughan.* Also, a general prayer for relief.

As surveyed and platted in *May,* 1853, by the county surveyor, the respective shares are thus situated:

Edward Vaughan, 45 acres.

Prudence Vaughan, 45 acres.

The Widow, 75 acres.

Sarah V. Burnet, 55 acres.

Alfred Vaughan, 50 acres.

B. H. Vaughan, 50 acres.

Surplus, 56 acres.

OHIO RIVER.

By this survey and location, the surplus 56 acres is thrown on the east end of the tract. But by the report of the commissioners making the partition, approved and confirmed by the Court, the 50 acres set off by them to *Benjamin* is almost as expressly located on the east end of the tract as that to *Edward* is on the west end. *Edward's* share is described thus: "Commencing on the west end, we assign and set apart to *Edward Vaughan* 45 acres—it being a piece of equal width from the river north to the east and west line of the land."

The several shares are respectively described as adjoining each other, in the progress of the division eastward. That to *Benjamin*, is thus described: "We assign and set apart to *Benjamin Vaughan* the remaining 50 acres, it being on the east end of said tract and adjoining the aforesaid *Alfred Vaughan*, making a total of 320 acres. But this location on the east end is again unsettled by the language which locates *Benjamin's* adjoining *Alfred's* and by the erroneous impression that this was a division of the whole tract.

The facts stated clearly make such an equitable case

as entitles the parties to relief. It will not do to turn them out of court in such confusion. Such questions must be met by the courts, and decided upon some safe basis. It is quite clear that more or less injury must result to some of the parties, whatever line of decision may be adopted. Mistakes can seldom be rectified with entire success. In a case like this, of mutual mistake, where that mistake has been entailed on innocent purchasers, it will not do to go behind the partition if it can be avoided. The mischief will be less to acquiesce in it, than to set it aside. The report of the commissioners is sufficiently certain because capable of being reduced to a certainty by survey. It would have been better had that been done in the first instance. In contemplation of law, however, the boundaries of the the several shares was well and clearly defined. The rights of the several heirs must be regarded as fixed by the partition as far as it went. That the heirs carelessly took possession of land to which, under the partition, they had no title, could not affect the rights of parties unless continued for at least 20 years. *Cox* v. *Ball,* 7 Ind. R. 453. If *Alfred,* by mistake of the true boundary of his own share, took possession of part of *Benjamin's* share, his acts neither invested him with any title, nor divested that of *Benjamin.* And so with the others. Parties cannot be allowed to take advantage of their ignorance of facts which they might and should have known.

But though the *Boyds* were not entitled to the relief sought, the facts under the general prayer entitled them to some relief. For that purpose the cause should have been retained, and the proper relief administered to the several parties. The Court therefore erred in sustaining the demurrer.

As a basis, the report of partition should be traced out as far as it goes—laying them by survey adjoining each other as the report indicates. That basis is exhibited by the plat of the county surveyor given above. That leaves the tract of 75 acres on which the dower was located, and the excess of 56 acres on the east—131

acres in all—still to be divided, among the heirs of Vaughan, or their heirs or assigns.

The Boyds are entitled to the 50 acres assigned to Alfred Vaughan; and if it appear that Cavender purchased his interest in the Vaughan estate, he is entitled to Alfred's share of the 131 acres. The Boyds are also entitled to 18 acres off of the west side of Benjamin Vaughan's share, if they prove, &c. This disposes of the whole estate.

If it be said that this will do great injury to some of the parties, we admit it, painfully feeling that it may. But who is to blame for it? Primarily, the heirs themselves. The report of partition was sufficiently explicit to have been traced out and the lines of each share run by a surveyor. If they failed to take the precaution to have that done before they entered and improved, they must bear the consequences. Cox v. Ball, 7 Ind. R. 453.

So, also, with the Boyds. It may be very true that the land they supposed they had purchased was part of Benjamin's share. Alfred had ignorantly taken possession and ignorantly delivered possession of the wrong land. For this wrong the Boyds have other remedies.

Whether any of the parties are entitled to any compensation for improvements made under these circumstances on the wrong land, is a matter for future consideration. It is not before us. The loss of their improvements may be the penalty which some will have to pay for their ignorance of that which it was in their power to know. Port v. Williams, 6 Ind. R. 219. A timely appeal to the surveyor with a copy of the partition in his hand, was all that was necessary.

Per Curiam.—The decision of the Court below is reversed at the costs of the adult defendants, with instructions to proceed in accordance with this opinion.

W. T. Otto and J. S. Davis, for the appellants.

B. Smith, for the appellees (1).

(1) The counsel for the appellee cited 2 Green Ch. 637; 14 Ohio, 543; Wright, 713; 5 Hamm. 245; 6 Litt. 112; 5 Munf. 108; 3 A. K. Marsh. 315.