IN THE MATTER OF THE APPLICATION OF THE MAYOR, ETC., OF THE CITY OF NEW YORK, FOR THE APPOINTMENT OF COMMISSIONERS TO ESTIMATE AND APPRAISE THE DAMAGES FOR TAKING CERTAIN LANDS DESIGNATED IN CHAPTER 522 OF THE LAWS OF 1884 FOR PARKS AND PARK-WAYS.

*Constitution, art. 3, sec. 16—when the title expresses the subject—1884, chap. 522 is valid—Constitution, art. 3, sec. 18—a park-way is not a highway within the meaning of it—eminent domain—land lying outside of the city limits may be taken for park purposes—appraisal of damages by commissioners—duty of, to take evidence as to value—construction of the act—only a majority of the commissioners need agree— United States Const., art. 1, sec. 10—not violated by this exercise of the right of eminent domain—a right of action against the city is a sufficient remedy—when land used for a public purpose may be taken.*

The title of chapter 522 of 1884, providing for the laying out of public places and parks and park-ways in the city of New York, and in the adjacent district in Westchester county, sufficiently expresses the subjects embraced in it to satisfy the requirements of section 16 of article 3 of the Constitution.

The fact that a portion of the land to be taken for the parks was, under the act, to be appropriated for a parade ground and rifle range, does not render the title insufficient or defective under the said constitutional provision.

That portions of the act providing for the connection of the four parks, directed by the said act to be laid out, by broad park-ways or avenues, do not conflict with the provisions of section 18 of article 3 of the Constitution, prohibiting the legislature from laying out, opening, altering, working or discontinuing roads, highways or alleys by a private or local bill.

The fact that the whole of one of the parks, and the easterly portion of another, together with the park-way connecting them, lie outside of the limits of the city of New York, does not prevent the legislature from authorizing the city to acquire title to the land for park purposes. It is sufficient if they be so contiguous to the municipal territory as to be conveniently accessible by its population.

The second section of the act made it the duty of the commissioners, to be appointed by the court, "after having viewed the said lands, tenements, hereditaments and premises, and after causing all such surveys, maps, profiles, plans and other things as they may judge necessary to be made, done and prepared for their use, to proceed with all due diligence to make a just and equitable estimate of the loss and damage to the respective owners, lessees, parties and persons respectively entitled to or interested in the said lands, tenements, hereditaments and premises, and to report to the said Supreme Court without unnecessary delay."

*Held,* that the act could not be held unconstitutional because it failed to require

the commissioners to take evidence as to the value of the property, or of any part of it; because,

*First.* The Constitution does not, in express terms or by necessary implication, require that the commissioners shall take evidence as to the value of the property intended to be appropriated.

*Second.* If it does require such evidence to be taken, then a direction for its being taken is to be implied from the direction contained in the act "to make a just and equitable estimate" of the loss and damage.

*Third.* That, in any event, a substantial hearing before the commissioners was secured by section 3, which required the report to be filed in a public office, and required the commissioners, in case written objections were filed thereto, to reconsider and, when necessary, to correct their report.

An opportunity to review the action of the commissioners is also afforded to the property owners upon the application to the court for the confirmation of the report required by the second section of the act.

The Constitution does not require that the three commissioners shall concur in the estimates of the compensation to be made; the legislature may make the concurrence of two as valid and effectual as that of all.

The act provided that "all leases and other contracts in regard to said lands so taken for said park or park-ways, or any part thereof, and all covenants, contracts or engagements, between landlord and tenant, or any other contracting parties, shall, upon the confirmation of such report, respectively, cease and determine, and be absolutely discharged according to law."

*Held,* that this provision did not violate section 10 of article 1 of the United States Constitution, prohibiting the passage of a law impairing the obligation of contracts.

A direction that within four months after the confirmation of the report the city of New York should pay the amount of the awards to the persons entitled to receive them, or, in default thereof, that the parties entitled to receive the same might sue for and recover the same, with lawful interest from and after demand thereof, together with the costs of the suit, is a sufficient provision for the payment of the awards to satisfy the requirements of the Constitution.

The validity of the act is not affected by the fact that a small portion of one of the proposed parks has been devoted to another public use so long as the party entitled to so use it makes no objection.

MOTION for the appointment of commissioners to estimate the loss and damage to be occasioned by the taking of lands for the purposes of public parks and for park-ways, under chapter 522 of 1884.

*John E. Develin, E. Henry Lacombe, John H. Miller* and *John E. Wells,* for the applicants.

*Charles H. Roosevelt, John C. Shaw* and *L. M. Leavy,* opposed.

Daniels, J.:

The lands, the value of which it is proposed to appraise by the intervention of appraisers, are described in section 1 of chapter 522 of the Laws of 1884. They are designed for six public parks, four of which it is intended to connect by means of public ways designated as park-ways. The application for their appointment has been resisted on the ground that the act, under which it has been made, was not enacted in conformity with requirements applicable to the subject, and contained in the Constitution of the State. A fundamental objection is presented upon the supposed insufficiency of the title of the act. It has been urged that this is defective under section 16 of article 3 of the Constitution, for the reason that its subject has not been expressed, as that is required to be, in the title. That the act is a local act has not been denied, and if this objection should be found to be sustained, then it must be held to be entirely inoperative. By the title, it was designated to be "an act laying out public places, parks and park-ways, in the twenty-third and twenty-fourth wards of the city of New York, and in the adjacent district in Westchester county, and authorizing the taking of the lands for the same," and this seems to constitute an intelligent reference to all that has been designed to be accomplished by the enactment of the law. It includes but one subject with its incidents, that is, the appropriation of the lands and the purpose to which they are to be devoted. The lands are precisely located and described, and the objects to which they are to be appropriated are fully disclosed by the act, and these purposes and objects are included briefly in the title given to the act. For the purpose of complying with this provision of the Constitution no more than a general statement of the subject of the act has been required, and it has, therefore, been held to be sufficient briefly to mention in the title the object or subject included in the law. (*Matter of Van Antwerp*, 56 N. Y., 261, 266; *People ex rel. Comrs.* v. *Banks*, 67 id., 568.)

The circumstance that a portion of the land designated as Van Cortlandt park is to be appropriated under the authority of section 6 of the act, for a parade ground and rifle range, will not deprive the title of its sufficiency, for the land so to be used will still remain a portion of the park, to be maintained and enjoyed as such when not

required for the use of the first division of the national guard, of the State, which is to be at liberty to use such portion for a military, parade, camp and drill ground and for rifle and target practice. The locality in which this land is to be appropriated for these particular uses will still remain and continue a park, but with these additional public uses imposed upon it. It will be at the same time a park with the right of this division of the national guard to use it in this manner when that may be required. This park is designed to consist of over 1,000 acres of land, while the portion of it intended to be used by the national guard, is to be limited to about 120 acres, and that use is not to be exclusive, but to be enjoyed only for the special purposes mentioned in the act. The land still being a park is within the intelligent import of the title of the act as a part of its subject, and the title may with propriety be held to be as broad as the Constitution requires it to be for a local act.

The park-ways designated and described in the act, are designed for avenues uniting four of the parks. As they have been described, they are peculiarly appropriate for that purpose, and may well be regarded as incidents to, or extensions of the areas of the parks themselves. The one uniting what has been designated as the Van Cortlandt and Bronx parks is intended to consist of about eighty acres of land, devoted to a park-way 600 feet in width and nearly a mile in length. Another, similarly to unite the Bronx and Pelham parks, includes an appropriation of about 91 acres of land, exclusive of an existing boulevard. The width of this park-way will be 400 feet, and its length about two and one-half miles. The third is of minor importance, and is designed to serve as a similar avenue between what is called the Crotona and the Bronx parks.

So far as the act has provided for these park-ways it is objected to as contravening so much of section 18 of article 3 of the Constitution as prohibits the legislature, by any local bill, from laying out, opening, altering, working, or discontinuing roads, highways or alleys. But these avenues are not designed to be, and have not been, laid out or provided as roads or highways. Those terms have a fixed and definite significance including the public roads and highways only of the State, while these park-ways are designed, and to be used, as broad and convenient avenues, uniting the main portion of this system of parks. They are for the convenient passage of per-

sons designing to use and enjoy the parks themselves, passing from one to the other, and not as public roads or highways, of this portion of the State.   And for that reason the legislature was not prevented by this provision of the Constitution from designating and laying out these avenues.   A point of a similar nature was considered in *People ex rel. Seaver* v. *Green* (52 How., 440), where it was held that this prohibition of the Constitution did not include a way of this description. The effect of this prohibition was further considered *In Matter of Lexington Avenue* (29 Hun, 303), where it was held that a public street of a city was not included within this provision of the Constitution.   And that decision was affirmed by the Court of Appeals (92 N. Y., 629.)   The same point again arose *In Matter of Woolsey* (95 N. Y., 135), and it was disposed of in the same way.   If a street of a city is not within this part of the Constitution, then certainly a park-way intended for the mere purposes of passage from one of these designated parks to another, must be excluded from its operation, for such an avenue can, in no proper sense of the térm, be held to be either a road or a highway.   And not being within this prohibition of the Constitution, the legislature, under its general legislative authority, did have the power to designate and lay out these particular avenues or ways.   And its power to do that was in no manner abridged by the fact that an existing highway was included as a portion of one of the park-ways for it was within the power of the legislature to subordinate it as a street, to this particular use. (*Matter of Prospect Park, etc., R. R. Co.*, 67 N. Y., 371, 377.) The other objections taken to the act are all founded wholly upon the provisions and directions contained in it.   It has provided for the appointment, by this court, of three disinterested persons to act as commissioners in estimating the compensation to be paid to the owners of these lands, for the appropriation of their property in this manner.   That the object to which the property is designed to be appropriated is not a public use, has not been, as it could not be seriously urged, for taking lands for this object is devoting them to a public use as that phrase has been employed in the Constitution. (*Holt* v. *City of Summerville*, 127 Mass., 408.)

It has, however, been urged that as the easterly portion of the Bronx park and all of Pelham park, together with their connecting park-way, are outside of the limits of the city of New York, that

these lands cannot be appropriated to the use of its citizens. But neither the Constitution nor any statute of the State has required that lands to be taken for this object shall be within the corporate limits of the city, for the benefit of whose inhabitants they may be designed. All that can be required is that they shall be so contiguous to the municipal territory as to be conveniently accessible by its population for its use and enjoyment. And that such is the location of this property is to be assumed from the fact that the Pelham park, which is the farthest from the city, can be reached by traversing a distance of less than three miles beyond the present north-eastern boundary of the city. This land is directly accessible to the citizens by water from the entire easterly front of the city, and if appropriated to this object will be readily accessible by means of other modes of conveyance which its appropriation will shortly and surely bring into existence. It is no more distant from the city than other parks are in other portions of the country, and at its present rate of increase in population the intervening territory must soon become a part of the city. At most, the appropriation of this land is but a short step into the future, and as it must be soon required for this object, if it is not wholly so at present, the time for obtaining it has already arrived. For the recreation and enjoyment of the present inhabitants of the city it will be advantageous, and for those who are soon to follow them it will be indispensable. And to meet the present and prospective wants of the city, prudence requires that the property should now be obtained. Similar reasons in point of necessity justify it as have already sustained the appropriation of land and water already to supply the necessities of the population of the city. That has been done at a greater distance beyond its boundaries than the land in question, and the authority to appropriate property in that manner, for those purposes, has neither been doubted nor denied, although the act under which it has been done has been before the courts for their consideration. (*Dyckman* v. *Mayor, etc.*, 1 Seld., 434.)

The commissioners, in case of their appointment, have been required, after taking and subscribing the requisite oath, to view the lands, tenements, hereditaments and premises described, and after causing such surveys, maps, profiles, plans and other things as they may judge necessary to be made, done and prepared for their

use, to proceed with all due diligence to make a just and equitable estimate of the loss and damage to the respective owners, lessees, parties and persons respectively entitled to or interested in such lands, tenements, hereditaments and premises, and to report to the General Term of the Supreme Court without unnecessary delay. This provision has not directed the commissioners to take evidence concerning the value of the property, or any part of it, and the omission so to provide in direct terms is relied upon as a fatal constitutional defect in the act. But if the taking of such evidence should be held to be an essential step in the proceeding, then it may be included within the direction given to the commissioners, to proceed and make a just and equitable estimate of the loss and damage sustained by the owners in the taking of their property, for whatever is essential to the performance of what the law requires to be done is necessarily included in the direction given for the attainment of the result. (*Stief* v. *Hart*, 1 Comst., 20, 30.) Where it was said, in the opinion of Jewett, C. J., that " where the law commands a thing to be done it authorizes the performance of whatever may be necessary for executing its commands." (*Bouton* v. *City of Brooklyn*, 15 Barb., 375.)

But the Constitution has neither in terms nor by fair implication required that the commissioners shall take evidence concerning the value of the property intended to be appropriated. What it has required is that " when private property shall be taken for public use the compensation to be made therefor, when such compensation is not made by the State, shall be ascertained by a jury, or by not less than three commissioners appointed by a court of record, as shall be prescribed by law." (Const., art. 1, § 7.) The commissioners have not been directed, neither has the legislature been required to provide that they shall take evidence upon this subject, but they have been left at liberty to proceed upon their own personal examination and investigation, and to act upon the knowledge or information obtained in that manner. This subject was considered in *Kramer* v. *Cleveland etc., Railroad Company* (5 Ohio, 140), where it was said in the prevailing opinion that " it is no part of the duty of the appraisers to hear evidence or arguments." * * * " They proceed upon actual view of the property taken or injured, and from the information thus derived make the appraisal

or assessment." (Id., 147.)   In this respect the same duty has, in the same terms, been enjoined upon the commissioners, that was prescribed by section 178 of chapter 86 of the Laws of 1813, for commissioners to be appointed to appraise and estimate the damages for the appropriation of lands for the opening of streets in the city of New York.   That act in a similar manner provided that " it shall be the duty of the said commissioners, after having viewed the lands, tenements, hereditaments and premises so required for the purpose of opening the said public square, or place, street, avenue or part, or section of a street or avenue, so to be opened, or for the purpose of laying out and forming the street or streets, or public place, so to be laid out and formed," etc. ; " and after causing all such surveys, maps, profiles, plans and other things as they may judge necessary to be made, done and prepared for their use, to proceed to and make a just and equitable estimate and assessment of the loss and damage," etc.   (2 Revised Laws, 1813, 410.)

The proceedings so provided for were, for many years, carried on under this authority, after the provision already mentioned had been made a part of the Constitution of the State, and it was not supposed to infringe upon this restraint or any other contained in the Constitution.   This long continuance of the exercise of authority and the acquiescence in the propriety of the provisions creating it, are very strong evidence that in giving such a direction this provision of the Constitution has not been violated, and that this portion of the act is in no manner in conflict with it.

But a substantial hearing before the commissioners upon the subject of compensation has been, in fact, provided for the owners of the land by the next section of the act.   For it has directed that a true report, or transcript, of their estimates, shall be deposited by them in the office of the commissioner of public works of the city of New York, for the inspection of whomsoever it may concern, at least fourteen days before they shall make their report to the court.   "And any person or persons whose rights may be affected thereby, and who object to the same, or any part thereof, may, within ten days after the first publication " of the notice provided for, " set forth their objection to the same in writing, to the said commissioners, who shall thereupon reconsider their said estimate, on the part or parts thereof so objected to, and in case the same

shall appear to them to require correction, but not otherwise, they shall and may correct the same accordingly." The notice required to be published by this section is one of fourteen days preceding the making of the commissioners report to the court, and it has been directed that it shall give a daily notice, by advertisement, for ten days after depositing the report or transcript of the estimate of such deposit in the office of the commissioner of public works. This deposit of the report or transcript, containing a statement of the estimates, together with the notice which it has directed shall be given, provides the owners of the property intended to be taken with ample means for discovering and contesting the estimates which the commissioners shall consider to be a fair equivalent for the land to be taken. And it will make them, as the notice previously provided for by the second section of the act, preceding the application for the appointment of commissioners, will also make them, parties to the proceeding. And they constitute a substantial compliance with that part of section 6 of article 1 of the Constitution, which declares that " no person shall be deprived of life, liberty or property, without due process of law." For it has been held that personal notice is not necessary to answer this requirement of the Constitution, but it may be a notice given by publication, as that shall be deemed to be proper in the judgment of the legislature, and be prescribed by law. *Campbell* v. *Evans* (45 N. Y., 356, 359), *Happy* v. *Mosher* (48 id., 313, 317), *Matter of De Peyster* (80 id., 565, 572), *Matter of Middletown* (82 id., 196, 201) where it was said that " if opportunity to appear and be heard is secured, it is wholly within the power of the legislature to determine the form and time and manner of notice to be given."

These proceedings, provided for by section 3 of the act, supplies the owners intending to contest the estimates, or judgment of the commissioners, with an ample opportunity to do that. For it requires 'the commissioners to deposit their estimates, or a transcript thereof, in a public office, where they will be accessible to the parties interested in knowing what the estimates may be, and afterwards provides for the publication of such notice as will supply them with the information and enable them to present their objections, in case the estimates shall turn out to be insufficient or unsat-

isfactory. And in support of their objections they will undoubtedly be at liberty to offer such proofs, by way of affidavits, as may, in their judgment, sustain the propriety of their objections. For where the right to object is reserved, as it has been in this manner, the right to make the objection intelligible and effectual is also included. It is no fatal objection to the proceeding that it has been provided that it shall take place after the commissioners have made their estimates of the compensation to be allowed. In that respect the proceeding is similar to that required to be followed by assessors throughout the State in making their assessments for the purposes of taxation. For they proceed, in the first instance, entirely upon their own judgment, and fix or set down what may be considered by them as proper valuations of the property to be assessed. And it is only after that has been done that the public notice has been required to be given, under which the owners of the property assessed may appear and object to the assessments. (1 R. S. [6th ed.], 937, § 18.) And the proceedings which may be taken by the owner of the property, after the publication of such notice, has invariably been considered to secure to him all necessary protection against improper assessments on the part of the assessors. The fact that they had already designated the value of the property was not, in judgment of law, a circumstance affecting their qualification to reconsider their action upon the appearance and hearing of the owner of the property. The same theory has been followed in the enactment of the third section of the act of 1884. By its provisions all persons interested in the lands are secured an opportunity for appearing before the commissioners in support of what they may deem to be their own proper claims for the taking of their property. But if the commissioners themselves, upon the reconsideration provided for, fail to adjust their estimates as the owners affected by them may deem to be just, they are provided with a still further hearing before the court. The notice directed to be published, in addition to a statement of the fact of the report or transcript of the estimates being deposited in the office of the commissioners of public works, is also required to state the day on which the commissioners' report will be presented to the court. The object of this part of the notice is to enable the owners of the property to appear before the court and there contest the action of the commissioners. And the court

is required to hear "any matter which may be alleged against the same." (Laws 1884, chap. 522, p. 630.)

This provision is precisely the same as was contained in the act of 1813, already referred to. That provided in the same terms for the confirmation of the report, or a reference of it to the same or other commissioners for revisal and correction, "after hearing any matter which may be alleged against the same." (2 Revised Laws, 1813, 413.) And the practice followed under that authority was the same as has already been suggested, that of presenting affidavits by the owners of the property contesting the correctness of the conclusions adopted by the commissioners. That was done, upon this subject of value, *In Matter of Fourth Avenue, etc.* (3 Wend., 452), where it was said in the opinion that one of the contestants "produced the affidavits of several respectable and intelligent men who appear to be well acquainted with the value of real estate in this part of the city of New York and to be capable of estimating correctly the effect of the proposed improvements." Similar proofs were presented and acted upon *In Matter of John and Cherry Streets* (19 Wend., 658, 662), and also *In Matter of Thirty-ninth Street* (1 Hill, 191, 193). To allow such proofs this authority must have been considered so broad as to entitle the parties to bring to the attention of the court all such information as may be necessary to enable it to determine whether any of the matters alleged against the report or estimates shall be well founded or no. And if it could be done, as it has been under the same provision contained in the act of 1813, it certainly can be under the broader authority of the act of 1884, expressly providing for objections to be presented to the commissioners and a reconsideration by them and a subsequent hearing before the court, in which is to be considered any matter which may be *alleged* against the report.

These provisions, under the authorities, secure to the owners of the property a very complete right to be heard upon the propriety of the estimates, which may be adopted by the commissioners. And if they can be shown to be erroneous, ample provision is made in this manner for their correction. The case is, therefore, in a marked manner distinguishable from that of *Stuart* v. *Palmer* (74 N. Y., 183), where, by the act under which the assessment was made no hearing whatever was provided for the owners of the property, who

were to be subjected to the assessment. While in this instance they have been secured a hearing before the commissioners them-'selves, after their own inspection and observation of the property, and the acquisition of such information as may be obtained by them, to guide them in making proper and suitable estimates. By the twenty days notice of the application for the appointment of commissioners required to be first published, and the notice of the deposit of the report, or a transcript thereof, in the office of the commissioner of public works, and of the time when the report will be presented to the court, and the opportunity secured for making objections, and their subsequent consideration by the commissioners, and the still later hearing before the court, as complete an opportunity has been secured to the owners of the property for their protection as could reasonably be required, under these provisions of the Constitution of the State.

The authority of the act has been further assailed upon the ground that the legislature could not authorize a majority of the commissioners to conclude the owners in their estimates of value and their report to the court. But the Constitution has in no manner required the concurrence of the three commissioners in the estimates to be made by them. It has not prescribed what their proceeding should be in this particular, and, accordingly, it was within the power of the legislature to designate and direct it. In this respect they have done no more than was directed by the statutes for the incorporation and acquisition of property by railroad companies. They proceed, in all cases, under the same authority of the Constitution, and yet a majority of them has been empowered by the statute to determine the compensation which ought to be made to the owner for the property taken from him for the construction of a railroad. (2 R. S. [6th ed.], 525, § 18.)

This course of proceeding has been followed for many years without serious doubt being suggested as to the power of the legislature to prescribe it. And precisely the same provision has been made by section 20 of chapter 606 of the Laws of 1875, for the construction and operation of other steam railways. Prior to the adoption of the present Constitution, the determination of a majority of the persons selected to appraise property taken for public purposes had been frequently authorized by the legislature. And in *Cruger* v.

*Hudson River Railroad Company* (2 Kernan, 190) it was considered and held that it had not been superseded by this Constitution. The same point arose in *Matter of Fourth Avenue* (11 Abb., 189), where a like provision was held to be valid. And that view was followed in *Astor* v. *Mayor* (62 N. Y., 580, 586). The directions contained in section 8 of the act of 1884, authorizing two of the commissioners to perform the trust and duties of their appointments, was not probably designed to empower them to exercise their authority independently of the third. To determine its signification and effect, the other provisions of the act are also required to be considered, and those contained in section 2 plainly directs all three of the commissioners to act together in making the estimates. They are all required to take the oath, and all are directed to proceed with due diligence to make a just and equitable estimate of the loss and damage of the owners, and they are all required to listen to and consider the objections authorized to be made by section 3 of the act, and all are to join in the notice of the deposit of the report, or a transcript thereof, and of the time when it is to be presented to the court, and in case either of the three shall resign, become disqualified, or refuse to act, provision has been made by section 7 for the appointment of another commissioner in his place.

These parts of the act very clearly render it their duty to act together, and it is only when they shall be unable to reach an unanimous agreement, or estimate, that two have been authorized to act, and this section should be considered and construed as only a further direction intended more fully to carry out that authority. For it is not to be presumed, unless the conclusion is very clearly maintained, that the legislature intended to violate the Constitution, as it would have done in the enactment of this provision, if two of the commissioners could proceed without the other in the discharge of the duties required to be performed by the three. A legislative act is never to be condemned upon a doubtful construction of its provisions. "It is only in cases of clear and substantial departure from the provisions of the fundamental law that courts will declare acts of the legislature invalid." (*Gilbert Elevated R. R. Co.*, 3 Abb. N. C., 434, 439.) To avoid that result the provisions made by section 8 must be construed with those contained in the second

section of the act, and as so construed may be rendered entirely harmonious with that section, as well as with the requirement made in the Constitution

The act also provides that "all leases and other contracts in regard to said lands so taken for said park, or park-ways, or any part thereof, and all covenants, contracts or engagements, between landlord and tenant, or any other contracting parties, shall upon the confirmation of such report respectfully cease and determine and be absolutely discharged, according to law." And for that reason it has been urged that it is in violation of so much of the Constitution of the United States as prohibits the States from passing any law imparing the obligation of contracts. But this restraint has not been considered as one affecting the right to take private property for public uses. It has, on the contrary, been held that all contracts and obligations relating to property mnst be regarded as having been entered into in subordination to that right, and to the duty to make compensation upon which it has been rendered dependent. (*Brown* v. *Corey*, 43 Penn. 495, 504; *West River Bridge Co.* v. *Town of Brattleboro* 6 How. [U. S.], 507, 532, 533, 538.) This objection, like the others to which attention has been directed, is therefore not entitled to be sustained.

The act has also been resisted upon the further ground that no proper provision has been made for the payment of the estimates. But in this respect it is precisely the same as the provision made by section 183 of the act of 1813, already mentioned, for it has been provided by section 4 of the act of 1884 that within four calendar months after the confirmation of the report of the commissioners the mayor, aldermen, etc., shall pay to the parties entitled thereto the respective sums, estimated and reported in their favor, respectively, or in default thereof the right, to sue for and recover the amount from the city, has been given. This is an absolute and unqualified obligation providing for payment to be made, or in default of it an adequate remedy for its recovery; for if judgments should be recovered against the city for the compensation its authorities would be obliged, by the proper proceeding applicable to the object, to levy and collect by way of taxation the amount required to make the payment. And that is all that is necessary by way of providing for the making of compensation to the owner

whose property may be taken.  (*Bloodgood* v. *Mohawk, etc., R. R. Co.*, 18 Wend., 10; *Rexford* v. *Knight*, 1 Kern., 308, 313, 314.)

No uncertainty can attend the report of the commissioners made by complying with the directions contained in the act concerning the owners of the property, or their interest in it, so far as that may be ascertained.  They have been directed to make a just and equitable estimate of the loss and damage of the owners, lessees and persons interested, etc., terms certainly broad enough to include every possible interest to be compensated by means of their estimates.  (*Watson* v. *N. Y. Central R. R. Co.*, 47 N. Y., 157, 161, 162.)  And that they have been required to proceed as far as that, in ascertaining the parties interested in the property, is evident from the provision in section 5 directing that "the said commissioners shall include and set forth in their said report the names of the respective owners, lessees, parties and persons entitled unto or interested in said land, tenements, hereditaments and premises mentioned in the said report, and each and every part and parcel thereof, as far forth as the same shall be ascertained by them, and add a sufficient designation and description of such respective lands and parcels of land aforesaid; and also, the several and respective sums estimated as and for the compensation and recompense or allowance to be made for the loss and damage of the respective owners of the fee or inheritance of such said lands, tenements, hereditaments and premises, respectively, and for the loss and damage of the respective owners of the leasehold estate, or their interest therein, separately."  This direction is so broad as to include all interests in the property, and if it could be made to depend upon the latter branch of the section containing it, by which owners of the fee are specially mentioned, it would still, under the authority of *Watson* v. *New York Central Railroad Company* (*supra*), be sufficient to include all interests in the property entitled to be compensated under the Constitution.

The directions contained in section 10 of the act for obtaining by the sale of bonds the funds requisite to pay the damages, expenses, etc., are not liable to any substantial objection, because of the fact that the bonds must be sold for not less than their par value, and the rate of interest shall not exceed that of three per cent per annum. For it is not to be presumed that the city authorities will be inca-

pable of realizing money by issuing and selling bonds subject to these restrictions. That cannot be determined until the bonds themselves are executed and placed upon the markets, as the statute has directed that to be done. But if the city should fail under these directions to obtain the money, the failure will not prejudice the rights of the persons entitled to payment of the estimates, as long as an absolute and unqualified obligation to make that payment has been imposed by the fourth section of the act upon the city, and in case the payments are not made within four calendar months, then subjecting it to an action or actions for the recovery of the moneys.

It is not very essential that the objections taken to the eleventh section of the act should be considered, for those contained in the preceding portions of it are entirely complete and adequate to the protection of the rights of the owners of the property. Even if section 11 should be held to violate section 17 of article 3 of the Constitution, it would not interfere with the execution of the law in other respects, and they are all that can be required for the appropriation of the property and the protection of the owners. If this section should be held to be inoperative it might, but not surely, effect simply the rights of the city of New York, and as no objection has been taken to it on the part of the city, the owners of the property who cannot be injuriously effected by it, are not at liberty to take that objection. But even if they could, the effect would be in the most extreme view which could be adoped to exclude this section from the act, and that exclusion would have no effect whatever upon the other provisions contained in it. (Matter of Middletown, *supra*.)

The fact that a small portion of one of the proposed parks has been already devoted to another public purpose is of no consequence whatever in this proceeding, and need not be seriously considered as long as the party entitled to the right to use it for such other public purpose has made no objection whatever to the exercise of this statutory authority over it. The same answer may be made concerning the provisions of the statute for the protection of the rights and interests of unknown owners. They are the class of persons who shall not be ascertained by the investigations and " diligent inquiry " expected to be made in the discharge

of their duties by the commissioners. As to them, the estimates which shall be made for their interests are required to be deposited for their benefit, and will be available to them whenever they shall afterwards appear and apply for payment. And the same provisions have been made for the protection of the interests of married women and persons incapable of protecting themselves. In this manner complete justice will be done to all interests in the property which may be appropriated to either of these parks or park-ways.

Some further objections have been taken to the act and the proceedings proposed to be instituted under it, but they are not of sufficient importance to require special consideration. Those which appear to have been in any respect substantial have been considered with the care and detail required by the importance of the enterprise and the interests involved. Neither has appeared to be well founded, and they should, therefore, be overruled and the application allowed to result in the appointment of the commissioners required to carry into effect the provisions of the act.

DAVIS, P. J., concurred.

Present — DAVIS, P. J., and DANIELS, J.

Motion granted, and following named commissioners appointed: Luther R. Marsh, George W. Quintard, J. Seaver Page.