**John F. GILSTRAP,
Defendant-Appellant,**

v.

**L. Harold GILSTRAP, Eva C. Floyd,
Plaintiffs-Appellees.**

No. 1–678A181.

Court of Appeals of Indiana,
First District.

Dec. 19, 1979.

---

Jerry M. Burton, Mark A. Pope, Johnson & Weaver, Indianapolis, for defendant-appellant.

James D. Allen, Allen & Thompson, Salem, for plaintiffs-appellees.

LOWDERMILK, Presiding Judge.

## STATEMENT OF THE CASE

Defendant-appellant John F. Gilstrap appeals the judgment of the Harrison Circuit

Court partitioning three tracts of land owned by himself and plaintiffs-appellees as tenants in common.

## FACTS

Plaintiffs-appellees L. Harold Gilstrap and Eva C. Floyd brought suit, pursuant to IC 1971, 32–4–5–1 *et seq.* (Burns Code Ed.), to partition lands held by themselves and John Gilstrap as tenants in common. Three separate tracts of land were involved; two small, improved lots (Tracts I and III) and one large tract containing farmland, highway frontage, an auto salvage yard, and bottom land (Tract II).

The parties could not agree as to whether the property should be sold or awarded in severalty, so the trial court appointed commissioners to resolve the dispute. The court's interlocutory order informed the commissioners that each of the co-tenants possessed a one-third interest in the property. The court noted that Harold owned four-sixths of a certain building located on Tract II; Eva and John possessed one-sixth interests. John claimed full ownership of certain buildings and scales he had constructed in the salvage yard, and the court instructed the commissioners to provide alternative reports based upon whether the claim was valid or not. (The court's final judgment rejected the claim.)

The commissioners reported that Tracts I and III were indivisible without damage to the owners and recommended that they be sold. They found that Tract II was amenable to division, and awarded Eva highway (business) frontage in the amount of 3.5 acres, more or less. Harold received similar frontage in the amount of 4.0 acres, more or less, while John received the 8.0 or so acres upon which the salvage yard was located, plus 30.0 or more acres of land which had previously been used for farming purposes. In order to balance the partition, the commissioners awarded owelty to John in the amount of $3,770.

John excepted to the report, his main concern being that the commissioners had designated a certain 16.90 acres of land as industrial development property and had placed a value on it of $3,500 per acre.

John asserted that there was insufficient access to the land to support such a designation and valuation. The court confirmed the report, however, and partition was ordered according to its terms.

## ISSUES

1. Whether the trial court erred in awarding parcels of land in amounts inconsistent with the survey taken and the report made by the commissioners.

2. Whether the trial court erred in failing to join a necessary party.

3. Whether the trial court erred in confirming the report of the commissioners.

*Issue One*

In their petition, Harold and Eva described Tract II as follows:

"Also, a part of the northwest quarter of section 20, township 2 north, range 4 east, described by beginning at a point ascertained as follows: Begin on the south line of said quarter section 21 rods west of the center of said section, thence in a northwesterly course . . . thence south 3¾ degrees east 13 chains and 42½ links to the place of beginning, *containing in the tract hereby conveyed 39.97 acres, more or less.*" (Emphasis added)

This description was evidently taken from the original title held by the parties' predecessors. The court adopted this description in its interlocutory order and instructions to the commissioners.

The commissioners had the tract surveyed, and they found that the tract contained 46.69 acres within the boundaries as set forth in the legal description. In their report, the commissioners relied upon the surveyor's estimates of acreage in making their distribution. They presented the following "recap of acreage" in Tract II:

| "Highway frontage | | 7.70 acres |
|---|---|---|
| Salvage Yard – Upland | 6.48 | |
| Bottom | 2.00 | 8.48 |
| Development Land | | 16.90 |
| Bottom Land | | 11.61 |
| River Bank | | 2.00 |
| Total – Tract 2. | | 46.69" |

Thus, according to their report, they distributed land to John, Eva, and Harold in the amounts of 38.99, 3.59, and 4.11 acres, more or less, respectively.

In the final decree, the court began its division of Tract II by setting forth the legal description of the property as provided in the petition, including the terms estimating the land to contain "39.97 acres, more or less." The court then set off the three parcels according to their proper, legal description, by metes and bounds.[1] However, along with the legal description, the court provided acreage estimates in the amounts of 31.92, 3.54, and 4.51 acres, respectively. This total of 39.97 acres is consistent with the description provided in the petition, but contradictory to the survey and the report of the commissioners.

John asserts that he has been deprived of 7.07 acres, more or less, by the action of the court. The argument has some validity. When the commissioners apportioned the land, they did compute the value of John's holdings by the acre.

"Salvage Yard (Industrial Development & Bottom Land)

| | |
|---|---|
| 6.48 acres (used as Salvage Yard) at 3,500/acre (less 2,500 clean-up costs) | 20,180 |
| 16.90 acres—Development Land at 3,500/acre | 59,150 |
| 11.61 acres—Bottom Land at 1,000/acre | 11,610 |
| 4.00 acres—Riverbank, etc. at 200/acre | 800 |
| Total Land | 91,740 |
| Buildings | 6,000 |
| Total | 97,740" |

This sum was compared with the value of the lands set off to Eva and Harold, and figured in the computations upon which the awards of owelty to John were based. On the other hand, John did receive the exact parcels of land the commissioners set off to him in their report, according to the legal description.

It is settled law that commissioners and courts may correct mistakes made in the description of lands sought to be parti-

tioned. As long as the court and commissioners have properly ascertained the property held in co-tenancy and subject to their jurisdiction, there is no error. *Certum est quod certum reddi potest. Winship v. Crothers,* (1863) 20 Ind. 455; *Randles v. Randles,* (1878) 63 Ind. 93; *Miller, Guardian v. Smith,* (1884) 98 Ind. 226; *Bower v. Bowen,* (1894) 139 Ind. 31, 38 N.E. 326; *Burger v. Schnaus,* (1915) 61 Ind.App. 614, 112 N.E. 246. However, we find that the trial court has unnecessarily confused the issue. The survey was performed for the purpose of this partition. The commissioners' division of the property is based upon the surveyor's figures. There is no reason to continue to rely upon the acreage estimate found in the petitioner's description, and there are good reasons to stop doing so. The trial court committed reversible error in basing its decree upon the petitioners' rather than the surveyor's (and commissioners') estimates. *See, Boyd v. Doty,* (1856) 8 Ind. 370; *Peden v. Cavins,* (1892) 134 Ind. 494, 34 N.E. 7.

*Issue Two*

As noted above, the commissioners recommended that Tracts I and III be sold. In their reports, however, they made brief reference to the fact that Tract I had already been sold for $20,000. They did not state by or to whom.

In the final decree, the court found that Tract I:

" * * * is owned by L. Harold Gilstrap, Eva C. Floyd and John F. Gilstrap, one-third undivided interest each, as above found, in and to said real estate, or to any proceeds derived from its sale, except that General Auto Parts, Inc. is the equitable owner of the interests of L. Harold Gilstrap and Eva C. Floyd in and to said real estate by reason of a contract of sale by which the said General Auto Parts, Inc. may purchase such interests for the sum of $20,000.00 for the entire tract and said General Auto Parts, Inc. is entitled to the interest of said L. Harold

---

1. In fact, John was awarded *all* of Tract II, according to legal description, minus the lands awarded to Harold and Eva, which had been previously described.

Gilstrap and Eva C. Floyd to the full extent of its rights under said contract."

The court further ordered that:

"Each of said tracts of real estate, after having been duly appraised as provided by law, shall be sold as separate units by Commissioners appointed for that purpose, at public auction for not less than two-thirds the appraised value thereof for cash.

Notice of the time, terms and place of such sales shall be given by three publications thereof in two weekly newspapers, printed and published in Washington County, Indiana, wherein all of said real estate is located, the last of which notices shall be at lease [sic] seven days before the date of sale. *And upon such sale being made and confirmed all claim or title in and to each tract of said real estate held by any one of said owners thereof shall be effectually barred as if said parties had themselves executed a conveyance thereof to the purchaser, except that the sale of Tract 3 [sic] above described shall be sold subject to and in such a manner as to fully protect and preserve the rights of General Auto Supply, Inc.*, in and to the two-thirds interest therein titled in L. Harold Gilstrap and Eva C. Floyd." (Emphasis added)

In his motion to correct errors, John asserted that the purchaser of the tract was a necessary party to the partition. The trial court rejected this assertion.

By statute, tenants have the right to a partition of the co-tenancy, along with the right *to a sale of the entire tract* of land in the event that said land is indivisible. *McClure v. Raber*, (1938) 106 Ind.App. 359, 19 N.E.2d 891; IC 32–4–5–1. However, the court may, in some cases, adjust and secure the rights of interested *parties* to the partition. In *Milligan v. Poole*, (1871) 35 Ind. 64, at page 68, our Supreme Court stated:

"In this State, it is provided by statute that all persons holding lands as joint tenants, or tenants in common, or tenants in coparcenary, may be compelled to divide the same as provided for in the act. 2 G. & H. 361. Ample provision is made

for ascertaining and settling the rights of the parties interested in the land, and if the land cannot be divided without damage to the owners, and consequently has to be sold, the court has power to adjust and secure the rights of the parties in the proceeds of such sale. And whether those rights be legal or equitable they are equally within the cognizance and protecting power of the court. *Martindale v. Alexander*, 26 Ind. 104; *Cradlebaugh v. Pritchett*, 8 Ohio St. 646."

In the case at bar, the interest of third persons not parties have been protected by court order. This has led to a legally unacceptable result: the partition sale of a one-third interest in land. Further, there is nothing in the record indicating that General Auto Parts, Inc. was ever mentioned in the trial proceedings in any manner. In oral argument counsel admitted this fact. It is improper for the trial court to consider evidence not of record in the cause.

We find that the trial court committed reversible error by failing to join the purchaser as a necessary party to the action.

*Issue Three*

■ The commissioners reported that the highest and best use of the 7.7 acres awarded to Eva and Harold would be for highway and commercial business. They stated that the highest and best use of the 38.99 acres awarded to John would be for "industrial development purposes." Thus, they evaluated John's holdings as shown above.

Although John generally challenges the industrial development designation, he is most concerned with the commissioner's decision as it regards 16.90 acres of high ground/development land which was valued at $3,500 per acre. John asserts that this acreage is landlocked—that there is no effective access to the land from any major thoroughfare. He argues that the city zoning ordinances require at least a sixty foot wide access to industrial property, and no such access exists. Thus, he concludes that the designation and valuation are incorrect.

The partition of co-tenancies by appointed commissioners is governed by statutes enacted over one hundred years ago. The appointment of impartial, resident freeholders to partition land in accordance with the judgment of the court has proven to be an effective and just manner of dividing joint interests.

Although it is true that the court may order a partition and divide the property itself, *Crumrine v. Crumrine,* (1921) 77 Ind. App. 76, 131 N.E. 230, once the court appoints commissioners, and they tender their report, the court must either confirm it, IC 34-4-5-11, or set it aside, IC 32-4-5-12, in its entirety. The court may not second-guess the commissioners' judgment and make any adjustments in the recommended distribution.

In the case at bar, the commissioners' report was confirmed and the judgment of partition was rendered accordingly. John objected to the distribution on the grounds presented above, and the trial court held two hearings on the matter.

In *Lucas v. Peters,* (1873) 45 Ind. 313, our Supreme Court stated:

> "In the original proceedings for partition, in the present case, the court awarded an interlocutory judgment of partition, and appointed commissioners to make the same, who reported a partition which was confirmed by the court. *The report of the commissioners is to be regarded in the light of a verdict of a jury rendered upon a trial at law; and it should be disturbed or interfered with by the court only upon grounds similar to those on which a verdict would be set aside, and a new trial granted. Livingston v. Clarkson,* 4 Edwards Ch. 596; *Tucker and Tucker,* 19 Wend. 226; *In re Pearl Street,* 19 Wend. 651; *In re John and Cherry Streets,* 19 Wend. 659; *In re William and Anthony Streets,* 19 Wend. 678; *Lacoss v. Keegan,* 2 Ind. 406; *Lake v. Jarrett,* 12 Ind. 395." (Emphasis added)

We have carefully examined the record of proceedings, keeping the appropriate standard of review in mind, yet we are constrained to hold that commissioners' report should be set aside, and the judgment of the trial court reversed.

The trial court ordered the commissioners to appraise the tract, with due regard being given to the effect that the rights of leaseholders, easements, and zoning laws may have on the valuation. It is undisputed that the City of Salem's zoning laws require sixty foot wide access to industrial property. The commissioners' report includes an estimate of the cost of running a sixty foot wide street across a vacant lot (included in Tract II and now awarded to Harold and Eva by halves) from the highway to the development land. However, they determined that the cost would exceed the benefit conferred.

The evidence further shows that although there is access to John's salvage yard, which lies adjacent to the development land, the access consists of only a thirty foot wide thoroughfare running in from Joseph Street. The "street" is neither dedicated nor of record. Title to the land across which it runs appears to be held by two different parties.

Although there is conceivable access to the 16.90 acres, for some purposes, via the thirty foot wide thoroughfare and John's salvage yard, there is no access which would satisfy the zoning law requirements for industrial property. The effective isolation of the property could have been avoided simply by granting John an *easement* across the vacant lot originally considered by the commissioners. Then, if John wished to put the land to its highest and best use, he could do so. However, as the judgment now stands, the 16.90 acres of industrial development property is landlocked as a matter of law.

The trial court's judgment is reversed, and the cause is remanded, with instructions to set the commissioners' report aside and proceed, pursuant to IC 32-4-5-12, in a manner not inconsistent with this opinion.

ROBERTSON and NEAL, JJ., concur.